232 N.J. Super. 532 (1989)
557 A.2d 1025
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOSEPH BETHUNE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted May 10, 1988.
Decided August 8, 1988.
Remanded November 15, 1988.
Resubmitted March 15, 1989.
Decided May 1, 1989.
*533 Before Judges PETRELLA and SHEBELL.
*534 Alfred A. Slocum, Public Defender, attorney for appellant (Harold J. Bush, Designated Counsel, on the supplemental letter brief).
Peter N. Perretti, Jr., Attorney General, attorney for respondent (Chana Barron, Deputy Attorney General, of counsel and on the supplemental letter brief).
Remanded by Supreme Court November 15, 1988.
The opinion of the court was delivered by SHEBELL, J.A.D.
This matter arises from defendant's 1983 convictions in the Law Division on two counts of aggravated sexual assault upon R.B., which he appealed to this court. We affirmed in our opinion of August 8, 1988. Defendant petitioned for certification to the Supreme Court. The Supreme Court ordered that the matter be "summarily remanded to the Appellate Division for clarification of its disposition of the `fresh complaint' issues raised in defendant's letter to the Appellate Division dated March 24, 1988." 114 N.J. 304 This court had inadvertently not considered the "fresh complaint" issues in its prior opinion. We requested of the parties and have received briefs on the remanded issue.
The essential facts are set forth in our August 8, 1988 opinion. Preliminarily, it is sufficient to state that defendant's conviction involved sexual assaults upon five-year old R.B. Approximately one or two weeks after the assaults, R.B. was taken to the hospital for a physical examination by two Division of Youth and Family Services workers. The child denied to the examining physician that she had been sexually abused. However, on the following day, Peggy Foster, a social worker at the hospital, discussed the incidents with R.B., and the child discussed and demonstrated the assaults by the use of anatomically correct dolls.

I.
Defendant contends that Ms. Foster's testimony relating R.B.'s statements about the assaults was erroneously admitted *535 as "fresh complaint" testimony, citing State v. J.S., 222 N.J. Super. 247 (App.Div.), certif. den. 111 N.J. 588 (1988). No objection was made before the trial court that Ms. Foster's testimony regarding R.B.'s "fresh complaint" should not be permitted as it was the product of questioning.
The "fresh complaint" rule permits the introduction of evidence that the victim of a sexual assault complained of the proscribed act within a reasonable time after the act occurred to someone who she would normally turn to for sympathy, protection or advice. State v. Balles, 47 N.J. 331, 338 (1966), app. dism., cert. den. 388 U.S. 461, 87 S.Ct. 2120, 18 L.Ed.2d 1321 (1967); N.J. Youth & Family Serv. Div. v. S.S., 185 N.J. Super. 3, 8 (App.Div.), certif. den. 91 N.J. 572 (1982).
In State v. Kozarski, 143 N.J. Super. 12 (App.Div.), certif. den. 71 N.J. 532 (1976), the defendant contended for the first time on appeal that the "complaint" of the infant victim of a sexual assault should not have been admitted under the "fresh complaint" rule, as it "may not have been a complaint at all, but may have been elicited under questioning by the mother." Id. 143 N.J. Super. at 17. The court did not decide the issue, as testimony of a different, unchallenged, "fresh complaint" witness had been admitted and there was thus no plain error. Ibid. As noted by appellant, in J.S., 222 N.J. Super. at 253, it was stated that in order for a statement by a victim of a sexual assault to be admitted under the "fresh complaint" rule, it must have been self-motivated and not extracted by interrogation. Cf. State v. D.R., 109 N.J. 348, 359 (1988), ("[A] child victim's spontaneous out-of-court account of an act of sexual abuse may be highly credible because of its content and the surrounding circumstances.") and proposed Evid.R. 63(33) in appendix to opinion.
Other jurisdictions are split on the issue of whether to admit statements which follow questioning under the "fresh complaint" doctrine. Compare Illinois v. Alexander, 11 Ill. App.3d 782, 789, 298 N.E.2d 355, 360 (1973) (statements of rape victim *536 upon questioning may constitute "fresh complaint") with Ketcham v. Indiana, 240 Ind. 107, 112, 162 N.E.2d 247, 249 (1959) (statement received by mother from five year old child not admissible as "fresh complaint" as story was "drawn out reluctantly by questions.")
Ms. Foster, the hospital social worker, when asked on direct examination by the prosecutor what R.B. had said to her, responded:
I interviewed her by asking her questions regarding her body. I asked her where her nose and mouth was [sic], I went over her body parts with her. I asked her at that time if anyone  anybody had touched her in the genital area and when going over the body parts, she identified her vagina as her privates. She identified the male anatomy as  the penis as the dicky. She then told me that Joey had put his dicky in her privates.
When asked what she did when she approached R.B., Ms. Foster responded, "I introduced myself to her. I told her what my job was at the hospital. I told her that I needed to ask her some questions about why she was in the hospital and then I showed her the dolls." Thus, R.B.'s complaint was not spontaneous, but flowed from questioning by Ms. Foster.
Evidence of "fresh complaint" is not offered as proof of the truth of the matter contained in the complaint, rather it is used to respond to the fact finder's natural assumption that if the act complained of had occurred, an early complaint would have been made. Balles, 47 N.J. at 338-40. "The function of such evidence is not corroboration or substantive proof but solely to sustain the credibility of the witness." State v. Gambutti, 36 N.J. Super. 219, 229 (App.Div. 1955).
The label "fresh complaint" is not rigidly adhered to, as testimony of this nature is competent even when it is not truly "fresh." 4 Wigmore, Evidence (Chadbourn Revision 1972) § 1135 at 301-03. The length of the delay is a factor to be considered as relevant to the weight to be given to the fresh complaint under all of the accompanying circumstances. Ibid. We have refused to adopt an inflexible approach on the issue of timeliness of the child's complaint. Kozarski, 143 N.J. Super. *537 at 16; State v. Hummel, 132 N.J. Super. 412, 423 (App.Div.), certif. den. 67 N.J. 102 (1975). The timeliness of the complaint and any circumstances explaining the delay are treated as questions for the jury. See Balles, 47 N.J. at 341.
It was stated in State v. Schaeffer that to a large extent the rule pertaining to "fresh complaint" is an arbitrary exception to the hearsay rule, and having determined that the testimony is competent, there is no sound reason why a greater lapse of time should render it incompetent, when the delay in making the complaint can be considered as relevant to the weight to be given to such testimony. 87 N.J.L. 663, 667 (E. & A. 1915). The same rationale is viable here.
At least with regard to children of tender years, the fact that the complaint was made in response to questioning need not be fatal to admissibility. It must be considered that there may be a reluctance on the part of an abused, and consequently confused and troubled young child, to discuss a traumatic sexual incident. Cf. D.R., 109 N.J. at 359-60. It is only natural and realistic not to require that the complaint be entirely volunteered and spontaneous. Having established that a jury may weigh the value of the complaint where freshness is in issue, we see no reason why that same consideration should not extend to the circumstances under which the complaint was made, i.e., whether in response to questioning or volunteered. To the extent that J.S. implies a contrary result, we are compelled to disagree with its position.
A proper instruction will focus the jury's attention on the issue of whether the "complaint" is truly from the child in all of the circumstances, including whether it was volunteered or the result of interrogation. It is for the jury to decide whether the complaint is sufficiently probative to dispel a contention that no complaint was in fact made at a point in time when, if the assault had occurred, the child would have made the fact known. In many cases the child's first opportunity for complaint may be coincidental with interrogation. We expect that *538 the scenario often follows a pattern where the child is upset, crying and otherwise disturbed and is then questioned by a parent or other authority figure, and for the first time discloses what has taken place. Here, the court effectively admonished the jury to consider all of the circumstances surrounding the child's complaints.

II.
Defendant also contends that additional testimony given by Ms. Foster "exceeded the permissible content of fresh complaint testimony," and was "incurably prejudicial, as it conveyed the allegation that defendant habitually molested R.B.." Ms. Foster testified at trial that R.B. had told her that the sexual assault had happened "a lot of times."
It is clear that "in cases of sexual abuse of an infant, testimony of similar incidents involving the same parties is admissible." State v. Hintenberger, 41 N.J. Super. 597, 605 (App.Div.), certif. den. 23 N.J. 57 (1956). Testimony by a third party to a victim's "fresh complaint," however, may only confirm the fact of the complaint and may not recount the details of the victim's complaint. See Balles, 47 N.J. at 339.
In applying this rule, it has been held that while the witness should not be permitted to tell the particulars of the complaint, enough may be given in evidence to show the nature of the complaint, even though it involves to some extent the particulars thereof, and that the rule is not violated by evidence as to the time and place where the complaint was made, the circumstances under which it was made, and the person to whom made, the condition of the victim when making the complaint, the conduct of the prosecutrix at the time she made complaint, and that she exhibited, if such was the fact, marks of violence and other like indications, as confirmatory of her testimony. [State v. Saccone, 7 N.J. Super. 263, 266 (App.Div. 1950) (citations omitted)].
Our Supreme Court in Balles, 47 N.J. at 339, noted that the response of the victim's mother to an inquiry as to what the victim told her, that "`she said Mr. Balles had put his hands down her panties and had touched here,'" did not constitute the improper recounting of details, as "[s]he did not elaborate and could hardly have said less and still identified the nature of [the *539 victim's] complaint." Indeed, there is merit to the observation in State v. Ramos, 203 N.J. Super. 197, 202-03 (Law Div. 1985), overruled by J.S., 222 N.J. Super. 247 (App.Div.), certif. den. 111 N.J. 588 (1988), that when the evidence is strictly limited to the question of whether or not the child complained, it is not hearsay at all, as it is not introduced to prove the truth of the matter stated. See Evid.R. 63.
The complained of testimony by Ms. Foster that R.B. said she had been assaulted "a lot of times" did not go beyond confirming the fact of the victim's complaint of multiple attacks. It did not add details that were outside the scope of the "fresh complaint" doctrine. The recounting of the child's complaints was not required to be limited to a single instance when she complained of multiple attacks. It is the detailed elaboration of the particulars of the complaints which is prohibited. The fact that complaints were made which related to more than one instance is not objectionable. Further, the challenged testimony of Ms. Foster, that R.B. had told her that defendant had assaulted her "a lot of times," was not reasonably objected to during the trial.

III.
Defendant further argues that, under J.S., the instructions given by the trial court regarding "fresh complaint" testimony were erroneous. The charge given by the trial court, both after Ms. Foster's direct testimony regarding R.B.'s complaint and at the close of summations, was similar to the charge which was found unacceptable in J.S.
It is clear that with "fresh complaint" evidence an appropriate limiting instruction must be given by the trial judge. State v. Tirone, 64 N.J. 222, 227 (1974), citing Evid.R. 6. The charge given in the present case as well as the charge in J.S. implied that the "fresh complaint" rule permitted "the testimony of a fresh complaint to bolster the credibility of the abused female." J.S., 222 N.J. Super. at 255. We stated in J.S. that the language *540 of the instruction "invites misapplication by a jury of fresh complaint testimony and exacerbates the prejudicial impact of such evidence when it is improperly received." Id. at 255-56. In J.S., 222 N.J. Super. at 257, we disavowed the Law Division decision in State v. Ramos, 203 N.J. Super. at 202-03 to the extent that it held that a victim's statement may be considered "as corroboration of the victim's assertion that she was assaulted  a way to bolster her testimony."
In the Ramos appeal to this court, decided six months after our decision in J.S., we found that while the Ramos jury charge did speak of the "fresh complaint" testimony as "supporting" the infant victim's credibility, any error was harmless beyond a reasonable doubt, as "the jury was immediately alerted to the fact that the particular testimony had a limited purpose." State v. Ramos, 226 N.J. Super. 339, 341-42 (App.Div. 1988). In the present case, the jury charge followed the theme of the Ramos charge by stating that "fresh complaint" testimony is "permitted but only for the purpose of supporting the credibility of the victim's complaint and not as corroboration of the alleged offense."
The only objection made to the "fresh complaint" charge given the jury, either after Ms. Foster's direct testimony or at the conclusion of the trial, concerned the use of the words "victim" and "alleged perpetrator" rather than the words "accuser" and "accused," which were used. No objection was made regarding the wording of the instruction, that a purpose of the "fresh complaint" testimony was to "bolster" R.B.'s testimony.
As no objections were made below, we will reverse only if the error was of such magnitude as to constitute plain error. R. 2:10-2; Spiegle v. Seaman, 160 N.J. Super. 471, 480 (App.Div. 1978). Plain error is "legal impropriety ... prejudicially affecting the substantial rights of the defendant and sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear *541 capacity to bring about an unjust result." State v. Hock, 54 N.J. 526, 538 (1969), cert. den. 399 U.S. 930, 90 S.Ct. 2254, 26 L.Ed.2d 797 (1970) (citation omitted).
The trial judge during the testimony of Ms. Foster specifically advised the jury that the hearsay evidence was being permitted "only for the purpose of supporting the credibility of the victim's complaint and not as corroboration of the alleged offense." Having concluded that the "fresh complaint" testimony was proper, we find no possibility that the trial judge's passing reference to courts having "adopted the rule of permitting testimony of a fresh complaint to bolster the credibility of the abused female" led to an unjust result or in any way influenced the jury's verdict. See State v. Macon, 57 N.J. 325, 335 (1971).
Affirmed.