578 A.2d 364

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
JOSEPH BETHUNE, DEFENDANT–APPELLANT.

Argued January 3, 1990—Decided August 1, 1990.

*Roderick Taylor Baltimore,* Assistant Deputy Public Defender, argued the cause for appellant (*Alfred A. Slocum,* Public Defender, attorney; *Roderick Taylor Baltimore* and *Alan I. Smith,* Designated Counsel, on the briefs).

*Chana Barron,* Deputy Attorney General, argued the cause for respondent (*Peter N. Perretti, Jr.,* Attorney General of New Jersey, attorney).

The opinion of the Court was delivered by

GARIBALDI, J.

In this appeal, as in *State v. Hill,* 121 *N.J.* 150, 578 *A.*2d 370 (1990), also decided today, we consider the application of the fresh-complaint rule. This case involves the application of that rule to cases involving young children. Three issues are presented: (1) whether statements elicited from children who after being questioned complain of having been sexually abused retain the degree of self-motivation necessary to qualify under the fresh-complaint rule; (2) how much detail is permissible as part of a fresh complaint; and (3) what should the trial court charge to guide the jury in its weighing of fresh-complaint evidence.

I

On April 21, 1983, Mary Bossack, a representative of the Division of Youth and Family Services ("D.Y.F.S.") took R.B., age five, to Newark's United Hospital Medical Center to ascertain whether the child had been sexually abused. D.Y.F.S. had been alerted to the possibility of abuse because R.B.'s eight-year-old sister, S.M., had entered Newark Beth Israel Medical Center four days earlier, complaining of abdominal pain. A physical examination revealed she had been sexually assaulted and infected with gonorrhea. Joseph Bethune, who lived in the household with the children and was the mother's romantic companion, was suspected of having perpetrated the sexual abuse. Ms. Bossack began an investigation by taking R.B. and her three-year-old sister to the hospital.

At the hospital, Maria Feliciano, a social worker, asked the child whether she had been molested. R.B. denied having been sexually abused. Dr. Renee Baskerville, a staff doctor, then

gave R.B. a complete physical examination. She found redness around the vaginal entrance, two tears in the hymen, and no unusual marks in the anal area. The physical exam did not provide conclusive evidence of sexual abuse, and the child denied once more any improper treatment at the ·hands of Joseph Bethune.

Dr. Baskerville did notice, however, that the child responded atypically to the gynocological exam. She was not reluctant to be examined and showed no concern when Dr. Baskerville inserted her finger into her vagina. Dr. Baskerville found this lack of response abnormal in a young child and possibly indicative of the child having been subject to sexual abuse. She admitted R.B. to the hospital and referred the case to Peggy Foster, a social worker at the hospital, for further investigation.

On April 22, 1983, Ms. Foster interviewed the child in the hospital's playroom and used anatomically correct dolls to engage the child in conversation. Ms. Foster asked R.B. to identify by name different body parts, such as the nose, the mouth, and the genitalia. R.B. labeled the vagina the "privates" and the penis the "dicky." Ms. Foster then pulled up the doll's dress and asked the child whether anyone had touched her vagina. The child responded that "Joey had put his dicky in her privates many times," and demonstrated this by placing the male doll on top of the female doll. Ms. Foster asked R.B. the number of times she had been assaulted and the child counted ten times on the social worker's fingers. R.B. also said she had told her mother, Patricia McQueen, of the abuse and that her mother had said she would make defendant leave the household. However, she never did. In addition, the child complained of painful urination after the incident.

As a result of the hospital's finding of sexual abuse, R.B. was taken from her home and placed in foster care, and Joseph Bethune was indicted on two counts of aggravated sexual assault. At trial, R.B. testified to the alleged assault. Specifi-

cally, the child detailed an incident that had occurred approximately one to two weeks prior to her admission to the hospital in which defendant had entered the bedroom where she slept with her two sisters, made her lie on her back, and inserted his penis into her vagina and anus.

Ms. Bossack, Ms. Feliciano, and Ms. Foster also reiterated their versions of the facts. Ms. Foster's testimony regarding what the child had told her was admitted into evidence under the fresh-complaint rule. Dr. Baskerville testified about her medical examination of R.B., and also added her expert opinion, based on three-years experience as a pediatrician, that her physical findings, although not conclusive of abuse, were also not inconsistent with the possibility of sexual abuse.

Joseph Bethune took the stand to dispute ever having abused R.B. Mr. Bethune's pastor testified to defendant's good character, even though he admitted not having known him during the time the abuse allegedly occurred. Mr. Bethune's sister and R.B.'s grandmother also testified to their belief that Ms. McQueen was a good mother and that Mr. Bethune was good to the children. Finally, Patricia McQueen herself took the stand and denied ever having known that Joseph Bethune was abusing the children. At one point, however, she testified that she regretted not having asked him to leave the household, in order to eliminate all the subsequent troubles.

The jury convicted defendant on two counts of aggravated sexual assault. The Appellate Division affirmed the conviction. We granted defendant's petition for certification and summarily remanded the matter to the Appellate Division "for clarification of its disposition of the 'fresh complaint' issues raised by defendant...." 114 *N.J.* 304, 554 *A.*2d 857 (1988). We retained jurisdiction.

On remand, the Appellate Division again affirmed defendant's conviction. 232 *N.J.Super.* 532, 557 *A.*2d 1025 (1989). The Appellate Division held that because an abused and troubled young child may be naturally reluctant to discuss a trau-

matic sexual incident, a complaint "made in response to questioning need not be fatal to admissibility." *Id.* at 537, 557 *A.*2d 1025. Instead, the trial court should instruct the jury that in weighing the value of the complaint, it should consider all the relevant factors surrounding the complaint, including the circumstances under which the complaint has been made, *e.g.*, whether in response to questioning or volunteered. Finally, the court held that Ms. Foster's testimony was not overly descriptive and that the jury's instructions on fresh complaint were not sufficiently erroneous to merit a new trial.

## II

### A. *Complaint elicited through questioning*

New Jersey courts have been inconsistent regarding whether a statement made by a child victim as a result of questioning qualifies under the "fresh complaint" rule. See *State v. Hill,* 121 *N.J.* 150, 578 *A.*2d 370 (1990), also decided today, in which we trace the history of the fresh-complaint rule and the current rule in New Jersey. In *State v. J.S.,* 222 *N.J.Super.* 247, 536 *A.*2d 769 (App.Div.), *certif. denied,* 111 *N.J.* 588, 546 *A.*2d 513 (1988), the Appellate Division held that a mother's testimony regarding her daughter's sexual abuse was inadmissible under the "fresh complaint" rule. In that case, the child's mother testified that when she had first broached the subject with her daughter, the child had wept and had refused to talk about it. The mother had then asked the child specifically if the defendant had touched or penetrated different parts of her body. The child had merely responded "yes" or "no" to the questions but had not elaborated. The child had never made an actual statement but had merely agreed or disagreed with her mother's accusations. The Appellate Division stated:

> While the methods employed by Mrs. M. to find out what had happened to her daughter were certainly understandable, our concern is whether the child's out-of-court responses satisfy the exacting standards for admissibility under a rule of evidence which permits such testimony only to demonstrate that the victim made a complaint.... In our view, to qualify as a complaint, the

victim's statements must at least be self-motivated and not extracted by interrogation.

[*Id.* at 253, 536 *A.*2d 769].

In contrast, the court in *State v. Kozarski,* 143 *N.J.Super.* 12, 16–17, 362 *A.*2d 598 (App.Div.), *certif. denied,* 71 *N.J.* 532, 366 *A.*2d 687 (1976), reasoned that even if it were true that the child's statements regarding sexual abuse had been elicited by his mother, it would not matter because the child had made a spontaneous complaint to a friend and playmate within one or two days of the alleged assault. Similarly, in *State v. Balles,* 47 *N.J.* 331, 221 *A.*2d 1 (1966), *cert. denied* and *appeal dismissed,* 388 *U.S.* 461, 87 *S.Ct.* 2120, 18 *L.Ed.*2d 1321 (1967), we admitted a mother's testimony under the fresh-complaint exception, without even noting that the complaint had been elicited through questioning. The child in the case had allegedly been sexually abused by her tutor. When her father had picked her up at the tutor's home, the child had appeared agitated. When he asked her what was wrong, she first refused to answer and then said that she did not want to talk about it. When the child arrived home, she was again questioned by her mother, and said that defendant had fondled her.

The inconsistencies in the application of the fresh-complaint exception are due in part to different fact situations and the courts' flexibility in applying "fresh complaint" strictures to cases involving young children. In deference to children's special vulnerability to being cajoled and coerced into remaining silent by their abusers, courts allow children additional time to make a fresh complaint. In *State v. Hummel,* 132 *N.J.Super.* 412, 423, 334 *A.*2d 52 (App.Div.), *certif. denied,* 67 *N.J.* 102, 335 *A.*2d 54 (1975), in determining what constitutes a reasonable time for the making of a fresh complaint, the court considered that the children in question lived in foster homes and had been threatened with being placed in a children's shelter if they ever told of the abuse. Similarly, in *State v. Kozarski, supra,* 143 *N.J.Super.* 12, 362 *A.*2d 598 (App.Div.1976), the court reasoned that the eleven-year-old victim's two-week delay in telling his

mother of having been abused was reasonable given the natural reluctance of a young boy to divulge such information to his parents.

Thus, New Jersey courts recognize that children may be too frightened and embarrassed to talk about sexual abuse, and that it is therefore necessary to be flexible in applying "fresh complaint" guidelines to complaints of children who allegedly have been sexually abused. We recognize also that not all questioning preceding a complaint deprives an utterance of the spontaneity and voluntariness needed for it to be admissible under the fresh complaint rule. *People v. Hood*, 59 *Ill.*2d 315, 319 *N.E.*2d 802 (1974) (Complaint elicited by question "what's wrong?" qualifies as fresh complaint); *People v. Damen*, 28 *Ill.*2d 464, 193 *N.E.*2d 25 (1963) (complaint elicited by question "What happened?" admissible as fresh complaint); *People v. Evans*, 173 *Ill.App.*3d 186, 122 *Ill.Dec.* 950, 960, 527 *N.E.*2d 448, 458 (1988) (complaint made in response to questions such as "what's wrong?" and "Did he do something to you?" is admissible because the questions were non-coercive); *State v. Stevens*, 289 *N.W.*2d 592, 594–96 (Iowa 1980) (victim's statement that she had been raped, made in response to a friend's general inquiry about what was wrong, was admissible).

 Juvenile victims may be reluctant to tell of a rape. "Because the child has no clear understanding of what has been done to her, her 'original complaint' often consists of responses to the questioning of a patient, persistent adult who draws the child's story from her." *State v. Garay*, 453 *So.*2d 1003, 1007 (La.Ct.App.1984); *accord State v. D.R.*, 109 *N.J.* 348, 359–60, 537 *A.*2d 667 (1988); *State v. Kozarski, supra*, 143 *N.J.Super.* at 16–17, 362 *A.*2d 598. Thus, to have validity, the rule of law must recognize that in a given case the victim may have made the complaint in response to questioning. Hence, we find that general, non-coercive questions do not rob a complaint of its admissibility under the fresh-complaint rule. *See State v. Hill, supra*, 121 *N.J.* at 167, 578 *A.*2d at 379.

We conclude, however, that statements, even those of children, made directly in response to coercive questioning are inadmissible under the fresh-complaint rule, because coercive interrogation robs those statements of the self-motivation necessary to qualify as fresh complaint. We do not mean to say that every time social workers and doctors question children about sexual abuse, they render the children's responses invalid under the fresh-complaint rule. Therapy play and non-coercive discussion may be necessary to liberate a child from the fear, embarrassment, or ignorance that causes the victim to be silent about abuse. *State v. Ramos*, 226 *N.J.Super.* 339, 544 *A.*2d 408 (App.Div.1988) (mother drew complaint from child after generally discussing materials regarding sexual abuse that the child had brought home from school).

There is a line, however, between questioning that merely precedes a complaint of sexual abuse and coercive questioning. We leave it to the trial court to determine when that line is crossed. In each case the trial court must examine the degree of coercion involved in the questioning of the child and determine whether the child's complaint was spontaneous or directly in response to the interrogation. Among the factors the court should consider in arriving at its determination are the age of the child, the child's relationship with the interviewer, the circumstances under which the interrogation takes place, whether the child initiated the discussion, the type of questions asked, whether they were leading, and their specificity regarding the alleged abuser and the acts alleged.

■ It is a close question whether Ms. Foster crossed the line. However, we need not resolve that issue, for regardless of whether Ms. Foster's testimony is inadmissible as fresh-complaint testimony, the following factors ameliorate the prejudice to the defendant from the testimony. First, Ms. Foster's testimony was not of singular weight or importance at trial. Ms. Foster was vigorously cross-examined. R.B. herself testified. Dr. Baskerville's testimony, although not conclusive of abuse,

did highlight the results of the gynecological exam, which could be interpreted to be consistent with abuse, and the child's atypical response to being vaginally examined. Thus, in addition to the fresh-complaint testimony, other medical and psychological testimony supported the victim's assertions. Thus, unlike *Hill, supra,* 121 *N.J.* at 167, 578 *A.*2d at 379, the fresh-complaint evidence in this case was not the accusor's sole corroboration.

Second, if we were to remand for a new trial, there is a strong likelihood that Ms. Foster's testimony would be admissible pursuant to *Evidence Rule* 63(33) (enacted subsequent to the *Bethune* trial), governing the tender-years exception to the hearsay rule. Thus, Ms. Foster's testimony would establish not merely that R.B. had complained but also the substance and details of her conversation with the child. *See State v. D.R.,* 109 *N.J.* 348, 537 *A.*2d 667 (1988). Ms. Foster's testimony, then, would not be excluded on remand. Therefore, we find that even if the trial court erred when it admitted Ms. Foster's testimony, the error was harmless.

### B. *Detailed testimony*

■ Defendant also alleges that Ms. Foster's testimony was so detailed as to be inadmissible under the fresh-complaint rule. The purpose of the fresh-complaint rule is to prove only that the alleged victim complained, not to corroborate the victim's allegations concerning the crime. Detailed testimony is impermissible under the rule. Professor Wigmore states:

> The purpose of [fresh complaint] is to negative the supposed inconsistency of silence by showing that there was not silence. Thus, the gist of the evidential circumstances is merely non-silence, i.e., the fact of the complaint, but the fact only. That she complained of a rape, or an attempt at rape, is all that principle permits, the further terms of her utterance (except so far as to identify the time and place with that of the one charged) are not only immaterial for the purpose, but practically turn the statement into a hearing assertion, and as such it is inadmissible.
>
> [4 Wigmore, *Evidence* (Chadbourne, rev. 1972) § 1136 at 307.]

New Jersey courts have adhered strictly and uniformly to the principle of disallowing excessive details. In *State v. Balles, supra*, 47 *N.J.* at 339, 221 *A.*2d 1, the Court assured itself that the witness offering fresh-complaint testimony "did not elaborate and could hardly have said less and still identified the nature of [the child's] complaint." Similarly, in *State v. J.S., supra*, 222 *N.J.Super.* at 254, 536 *A.*2d 769, the court disapproved of "details which were superfluous to identify the nature of [the child's] complaint."

Defendant argues that Ms. Foster's testimony was overly detailed because it referred to the specific act of penetration and to the child's statement that Bethune had assaulted her many times. Defendant faced trial for only one specific incident of sexual abuse, and R.B. testified to being sexually assaulted only once. The details and statements that Bethune had repeatedly abused the child, given that no other evidence of that existed on the record, were highly prejudicial to defendant. On the other hand, Ms. Foster testified only to what she saw the child do and not to the truth of the child's statements. Moreover, Ms. Foster was vigorously cross-examined. Although Ms. Foster's testimony appears to be excessively detailed to qualify under the fresh-complaint rule, the detail would be permissible under the tender-years exception to the hearsay rule. *Evid.R.* 63(33).

C. *Jury instructions*

Defendant relies on *State v. J.S., supra*, 222 *N.J.Super.* 247, 536 *A.*2d 769, to claim that the trial court's charge to the jury was erroneous and prejudicial. The trial court made a passing reference in its charge to the former practice of admitting "fresh complaint" evidence in order to bolster the victim's credibility. Yet, in *J.S.*, the court stated that the jury charge should be devoid of references to the complaint "supporting" or "bolstering" the victim's credibility. *Id.* at 257, 536 *A.*2d 769. The charge should merely inform the jurors that "fresh com-

plaint" evidence serves the sole purpose of "neutralizing the inference that might otherwise be drawn that [the alleged victim's] behavior was inconsistent with a claim of sexual abuse." *Ibid.* We agree.

Trial courts should instruct the jury of the limited role that fresh-complaint evidence should play in its consideration of the case. The trial court should make clear that a fresh complaint does not bolster the victim's credibility or prove the underlying truth of the sexual assault charges but merely dispels the inference that the victim was silent.

In *State v. Hill, supra,* 121 *N.J.* 150, 578 *A.*2d 370, we discuss how the expectation that a grown woman will complain after having been raped is not necessarily logical or true. Likewise, a young child may not tell anyone of sexual abuse for a myriad of reasons, including fear, ignorance, or confusion. The jury should not assume that merely because a child does not make a fresh complaint, the child's subsequent charges are contradictory or false. In cases in which a child fails to complain, the court should, if requested by the State, instruct the jury not to consider it evidence weighing against the credibility of the child, because silence is one of the many ways a child may respond to sexual abuse. We recognize that there may be cases in which the trial court could believe that a child's silence about sexual assault is not an issue and that an instruction to the jury concerning the matter would do more harm than good. In those cases, the trial court may omit the charge. Whenever defense counsel or a witness attempts to shed doubt on the child's credibility because of his or her silence after the assault, however, the trial court should issue a curative instruction and instruct the jury not to draw from the silence an adverse inference.

Defendant did not object to the jury charge. Hence, we will reverse only if there was plain error or the error had a clear capacity to bring about an unjust result. *R.* 2:10–2; *State v. Hock,* 54 *N.J.* 526, 538, 257 *A.*2d 699 (1969), *cert. denied,* 399

*U.S.* 930, 90 *S.Ct.* 2254, 26 *L.Ed.*2d 797 (1970); *Spiegle v. Seaman,* 160 *N.J.Super.* 471, 480, 390 *A.*2d 639 (App.Div.1978). Although the trial court in its charge should have made no reference to "bolstering" the credibility of the victim, that error was harmless given the court's instructions regarding the limited purpose of the fresh-complaint rule.

### III

Questioning of young children may be a necessary component of unearthing sexual abuse. As long as the questioning is noncoercive, evidence of the complaint is admissible under the fresh-complaint rule. However, only the fact of the complaint is admissible. Excessive details should be excluded at trial. Finally, the trial court should instruct the jury that the complaint is not evidence that the sexual assault occurred, or that the victim is credible, but merely serves to negate any inference that because of the victim's silence, the offense did not occur. In most cases in which the victim does not complain, the trial court if requested by the State should instruct the jury not to draw any negative inference from the victim's silence.

Specifically, in this case, we find that while the questioning may have crossed the line between that necessary to draw out the child and coercion, and the testimony may have been overly detailed, there was much other evidence to corroborate the child's complaint, and the fresh-complaint evidence would probably still be admissible on remand under the tender-years exception. *Evid.R.* 63(33).

Accordingly, the judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

Justice CLIFFORD concurs in the judgment.