# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1678-16T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

V.E.,

    Defendant-Appellant.

_____

Submitted August 1, 2018 — Decided August 8, 2018

Before Judges Hoffman and Currier.

On appeal from Superior Court of New Jersey, Law Division, Passaic County, Indictment No. 11-07-0653.

Harkavy, Goldman, Goldman & Gerstein, attorneys for appellant (Martin S. Goldman, on the brief).

Camelia M. Valdes, Passaic County Prosecutor, attorney for respondent (Christopher W. Hsieh, Chief Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant V.E. appeals from his convictions following a jury trial, alleging the trial court erred in allowing the jury to hear

improper expert testimony and evidence regarding a prior bad act. He also contends his counsel was constitutionally ineffective. We affirm.

Defendant was charged in an indictment with three counts of first-degree aggravated sexual assault on a minor, N.J.S.A. 2C:14-2(a)(1); three counts of second-degree sexual assault on a minor, N.J.S.A. 2C:14-2(b); and three counts of second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a). A jury convicted defendant on all nine counts. He was sentenced to an aggregate forty-five year prison term, subject to the No Early Release Act, N.J.S.A. 2C:43-7.2.

During the trial, defendant's three stepdaughters testified he touched them on their private parts and forced them to touch his penis and perform other sexual acts on numerous occasions over the course of three years. They also testified he subjected them to physical abuse. After one of the children reported the abuse to her grandmother, the children's mother took them to a hospital for examinations and contacted the police.

Each of the victims subsequently gave a video-recorded statement at the prosecutor's office describing the sexual interactions with defendant. One of the girls stated defendant "peed" on her legs, describing it as slimy, orange, and green.

The State presented the children's grandmother as a "fresh complaint" witness at trial. She described to the jury the disclosure to her from one of the victims about defendant's sexual contact. During an extensive cross-examination, defense counsel asked numerous questions regarding the child's disclosure. On redirect, the prosecutor asked the grandmother what else her granddaughter told her in addition to defendant abusing her. The witness answered:

> She said that [defendant] get on top of her and put his finger on her — on her private part and it hurts a lot. And then . . . he put nasty stuff . . . on top of her body. He peed on — on her. That's . . . her word. That he peed on her.

There was no objection to this testimony.

Dr. Brett Biller, the training director at the Child Abuse and Maltreatment Center at St. Peter's University Hospital, testified as an expert on Child Sexual Abuse Accommodation Syndrome (CSAAS). Advising he was not familiar with the facts of this case or any of the victims, he explained to the jury the theory of the syndrome and the factors that compose it — secrecy, helplessness, entrapment, accommodation, delayed disclosure, and recantation.

Defendant raises the following arguments on appeal:

> POINT I: THE TRIAL COURT ERRED IN ALLOWING THE PRIOR BAD ACT OF [V.E.] PEEING ON VICTIM [X.F.] TO MAKE ITS WAY TO THE JURY BY WAY OF FRESH COMPLAINT TESTIMONY (Not Raised Below).

A-1678-16T3

POINT TWO:  THE TRIAL COURT ERRED IN ALLOWING CSAAS EXPERT TESTIMONY FROM BEING INTRODUCED INTO THE TRIAL (Not Raised Below).

POINT THREE:  DEFENSE COUNSEL WAS HIGHLY INEFFECTIVE IN FAILING TO OBJECT TO PEEING INCIDENT, FAILING TO CROSS EXAMINE EXPERT, AND USING THE DISCIPLINARY CHARACTER OF MR. [V.E.] AS A DEFENSE TACTIC AT EXPENSE TO HIS CHARACTER (Not Raised Below).

In addressing points one and two, we note these issues are raised for the first time on appeal; we, therefore, only review for plain error.  State v. Williams, 168 N.J. 323, 335 (2001); R. 2:10-2.

Defendant argues the bad act conduct elicited from the fresh complaint witness should have been excluded under N.J.R.E. 404(b) and the Cofield[1] test.  Defendant asserts the testimony provided by the grandmother on redirect was inappropriate for a fresh complaint witness and had no relevance to the child's initial disclosure.

As our Supreme Court reaffirmed in State v. R.K., 220 N.J. 444, 455 (2015), the fresh-complaint doctrine allows the State to present "evidence of a victim's complaint of sexual abuse, otherwise inadmissible as hearsay, to negate the inference that the victim's initial silence or delay indicates that the charge

---

[1]  State v. Cofield, 127 N.J. 328, 338 (1992).

is fabricated." The Court cautioned: "Only the facts that are minimally necessary to identify the subject matter of the complaint should be admitted; the fresh-complaint testimony is not to be used 'to corroborate the victim's allegations concerning the crime.'" Id. at 456 (quoting State v. Bethune, 121 N.J. 137, 146 (1990)).

During the grandmother's direct testimony, she stated when one of her granddaughters saw two dogs humping one another, she started crying and told her grandmother "that happened to her" and "that must be hurting." The child also told the grandmother defendant put his finger on her private part. That was the extent of the State's questioning of the fresh complaint witness.

Cross-examination of the witness, in contrast, ensued over fifty-seven pages of transcript. The grandmother was asked detailed questions about the victim's disclosure to her and the dynamics within the family as well as her feelings about defendant.

On redirect, the prosecutor asked the witness what else the child told her in addition to the disclosure of the sexual contact; the grandmother replied her granddaughter stated defendant "peed" on her. Thereafter, the judge instructed the jury on the limitations for their consideration of fresh complaint testimony. In the circumstances existing here, where the defense elicited

additional detail from the fresh complaint witness concerning the victim's disclosure, we perceive no plain error.

The trial judge gave a thorough instruction to the jury, explaining that the fresh complaint evidence was permitted only

> to negate the inference that the children failed to confide in anyone about the sexual offense. . . .
>
> A fresh complaint is not evidence that the sexual offense actually occurred or that . . . the children, themselves, . . . are credible. . . .   It does not prove the underlying truth of the sexual offenses.
>
> . . . .
>
> Proof that a complaint was made is neither proof that the sexual offense occurred nor proof that the children are truthful.

The grandmother's testimony on redirect was not elicited to describe a substantive bad act or other crime.  It was instead conduct relating to the child's disclosure of a sexual assault. Therefore, the testimony was not subject to N.J.R.E. 404(b) and there was no need for a Cofield analysis.

We are also unpersuaded the trial court erred in allowing CSAAS expert testimony.  Our Supreme Court previously allowed this testimony to "explain why many sexually abused children delay reporting their abuse, and why many children recant allegations of abuse and deny that anything occurred."  State v. J.Q., 130 N.J. 554, 566 (1993) (quoting John E.B. Myers, Expert Testimony

A-1678-16T3

in Child Abuse Litigation, 68 Neb. L. Rev. 1, 67-68 (1989)) overruled in part by State v. J.L.G., __ N.J. __ (2018)(slip op. at 57).[2]

Biller explained the theory to the jury and described the five categories of behavior comprised in the syndrome. He advised he did not have any information regarding this case and had not met with any of the victims or witnesses. Defense counsel did not object to the expert's testimony nor did she cross-examine him on any aspect of it.

On appeal, defendant does not take issue as to any specific portion of the CSAAS testimony; instead, he argues this type of testimony should not be introduced at all. He asserts victims themselves can explain their delay in reporting or subsequent denial of abuse. We are satisfied that Biller testified in accordance with the narrow parameters established in State v. J.R., 227 N.J. 393 (2017). It was not an abuse of discretion to permit the limited testimony since CSAAS testimony was still permitted at the time of defendant's trial.

In his final point on appeal, defendant takes issue with his counsel's trial tactics, asserting counsel was "highly

_____

[2] Our review of the Court's ruling in J.L.G. does not alter our decision in this case as we conclude the CSAAS testimony was harmless in light of the overwhelming proof of defendant's guilt.

ineffective." "Our courts have expressed a general policy against entertaining ineffective assistance of counsel claims on direct appeal because such claims involve allegations and evidence that lie outside the trial record." State v. Castagna, 187 N.J. 293, 313 (2006) (quoting State v. Preciose, 129 N.J. 451, 460 (1992)).

Each argument defendant makes on this direct appeal requires exploration of the trial attorney's trial strategy and decision-making process. It is simply not possible to fairly assess those claims on this record. Preciose, 129 N.J. at 460. The Castagna principle holds true today, particularly in this case where such serious allegations are made. Accordingly, we do not address the points on appeal, but leave it to defendant to file the appropriate application.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1678-16T3