**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2320-21

STATE OF NEW JERSEY,

     Plaintiff-Appellant,

v.

VASHON M. McPHAUL-
ROBERTS,

     Defendant-Respondent.

_____

        Submitted September 21, 2022 – Decided January 29, 2024

        Before Judges Accurso, Vernoia, and Firko.

        On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Warren County, Indictment No. 20-01-0023.

        James L. Pfeiffer, Warren County Prosecutor, attorney for appellant (Naya Ayana Tsang, Assistant Prosecutor, on the briefs).

        Joseph E. Krakora, Public Defender, attorney for respondent (Morgan A. Birck, Assistant Deputy Public Defender, of counsel and on the brief).

   The opinion of the court was delivered by

FIRKO, J.A.D.

By way of leave granted in this sexual assault case involving a child, the State appeals from a February 24, 2022 order denying its motion to admit fresh complaint testimony from three witnesses. The State chiefly contends the motion court abused its discretion in finding the victim, K.N.'s[1], complaints were too remote in time to constitute fresh complaints. For the reasons that follow, we affirm in part, reverse in part, and remand.

I.

On October 30, 2018, the Warren County Prosecutor's Office received a referral regarding child sexual abuse from the Division of Child Protection and Permanency (Division). On November 1, 2018, K.N., then fifteen years old, provided a recorded statement to Detective Kevin Graham in the Special Victims Unit. K.N. informed Detective Graham that she was sexually assaulted by defendant, Vashon M. McPhaul-Roberts, from June 2011 until June 2013, when she was between eight and ten years old. K.N. reported that defendant had been dating her mother and was her younger half-sister's "Brittany's" father. K.N. described defendant as a type of father figure, who was at their house every day.

---

[1] We use initials and a pseudonym to protect the confidentiality and identity of the child victim pursuant to N.J.S.A. 2A:82-46(a) and Rule 1:38-3(c)(9).

K.N. told Detective Graham that the incidents of sexual assault took place at her mother's home. She stated that defendant would come into her bedroom at night sometimes while she was awake and, at other times if she was asleep, he would wake her up. K.N. also reported defendant would take down her pants and underwear and touch her "private areas," and sometimes defendant made her touch his "private areas." The term "private areas" was clarified by K.N. to mean defendant's penis and her vagina. K.N. revealed the abuse began shortly after an incident where defendant was caught by the police running around the neighborhood naked.

K.N. also reported to Detective Graham that such incidents occurred around ten times, and more times than not, defendant inserted his fingers into her vagina after removing her pants and underwear. The victim's mother was not home when the alleged sexual assaults took place. According to K.N., defendant told her, "Don't tell your mom, this is our little secret. Not that she would believe you anyway."

The abuse stopped when defendant and K.N.'s mother ended their relationship and he no longer came to their home. K.N.'s mother had custody of her daughters—both K.N. and Brittany—at the time of the alleged disclosure. K.N.'s mother was unaware of the sexual abuse until she was interviewed by law

3

enforcement. She told law enforcement that she and her children had no contact with defendant "in at least five years," because he had moved to the State of Georgia.

During the 2016 to 2017 school year when she was in the eighth grade, K.N. disclosed the sexual abuse to three friends, M.S., L.H., and J.V., and her older half-sister, J.N., by another mother. K.N. mentioned M.S. was her best friend at the time and that she was close with L.H. K.N. told L.H. about the sexual abuse when the two went out to eat, and K.N. later told the other three friends together. Law enforcement obtained recorded statements from L.H. and J.N. M.S.'s and J.V.'s parents did not permit interviews of their children by law enforcement, and M.S. and J.V. never had any further involvement in this matter. K.N. never told an adult about defendant's alleged sexual abuse until she made a disclosure to her high school counselor, A.C., in October 2018.

On November 13, 2018, Detective Graham conducted a recorded interview with A.C., who confirmed that K.N. disclosed the sexual abuse to her approximately two weeks earlier on October 30, 2018. A.C. in turn reported K.N.'s disclosure to the Division. A.C. described K.N.'s demeanor as being very scared to come forward and fearful of the aftermath of her disclosure. A.C. told Detective Graham that K.N. was concerned that other individuals would not

believe her story; her parents would be angry with her; and family relationships would be ruined, for which she would be blamed.

On November 13, 2018, Detective Graham interviewed L.H. at her high school. L.H. confirmed that while both she and K.N. were in the eighth grade, K.N. told her about being sexually abused by Brittany's father, who is defendant.

On November 13, 2018, Detective Graham also interviewed J.N. at her high school. J.N. stated that K.N. mentioned going to the police about being sexually assaulted by defendant. The victim may have told J.N. about the sexual assaults in the past, but J.N. could not recall.

On February 22, 2019, and on January 13, 2020, defendant was charged in 2020 with committing the following offenses between June 1, 2011, and June 1, 2013, when K.N. was eight to ten years old: first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(1) (count one); second-degree sexual assault, N.J.S.A. 2C:14-2(b) (count two); and second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a) (count three).[2]

---

[2] In its merits brief, the State indicated defendant was released pre-trial on his own recognizance. Subsequently, defendant violated a condition of his pre-trial monitoring and was remanded to the Warren County jail where he is presently detained.

On October 29, 2020, the State filed a notice of motion to admit fresh complaint testimony from three individuals—L.H., J.N., and A.C.

On December 15, 2021, a N.J.R.E. 104 fresh complaint hearing was held to determine whether K.N.'s various reports to L.H., J.N., and A.C. were made within a reasonable time such that they qualify under the legal standard for admission as fresh complaint evidence. At the fresh complaint hearing, L.H., J.N., and A.C. testified and were cross-examined by defense counsel. No expert testimony was elicited by either party.

### L.H.'s Testimony

L.H. testified that she has known the victim, K.N., since they were eight or nine years old. L.H. testified she and K.N. had been best friends who talked to each other about everything, including boyfriends and "stuff" going on at home. According to L.H., when they were both in the eighth grade during the 2016 to 2017 school year, K.N., then approximately thirteen years old, told L.H. she had been sexually assaulted. When the disclosure was made, L.H. testified K.N. appeared upset because she was going to see defendant at an upcoming family event.

K.N. started to cry and went to the school restroom. L.H. followed her into the restroom, where K.N. explained to L.H. during a ten-to-fifteen-minute

conversation that she had been sexually assaulted by defendant and that was the reason she was anxious about seeing him at the upcoming party. K.N. and L.H. never discussed the sexual abuse again, and L.H. did not report K.N.'s disclosure of sexual abuse to anyone. L.H. stated she was young at the time and did not know how to handle that sort of information.

<u>J.N.'s Testimony</u>

J.N. testified that she is seven months older than her half-sister K.N. According to J.N., her relationship with K.N. was close when they were younger, and they grew apart as they got older. J.N. testified that in October 2018, when K.N. was thirteen or fourteen years old, and either in the ninth or tenth grade, K.N. had disclosed that she had been touched in a sexual manner by defendant when she was eight or nine years old. The disclosure took place during the school year while J.N. and K.N. were at school. K.N. told J.N. that she was scared to tell anyone about the sexual abuse because of her mother's relationship with defendant, and because they had a child together, Brittany. K.N. told J.N. she did not want to hurt K.N.'s mother or put Brittany in a compromising position, or hurt anyone else. J.N. related that K.N. felt multiple individuals would get hurt if she disclosed defendant's sexual abuse.

A-2320-21

### A.C.'s Testimony

A.C. testified that she first met with K.N. while K.N. was a high school freshman as part of an unrelated investigation regarding harassment, intimidation, and bullying. During one of their meetings, K.N., then fifteen years old, questioned A.C. about her duty to report "abuse" of a sexual nature, what information would remain confidential, and what A.C. was required to report to authorities. In October 2018, on the second or third occasion the two met, K.N. disclosed to A.C. that when she was younger—at age nine or ten— she was "inappropriately touched" by her "stepdad," referring to defendant. A.C. did not ask K.N. any follow-up questions, other than to confirm she was not in "any imminent danger," because A.C. contended it was not her job to obtain a disclosure. A.C. immediately reported K.N.'s disclosure to the Division because A.C. felt she had enough information to report.

### The State's Argument

The State contended K.N.'s disclosures to all three individuals are admissible under the fresh complaint doctrine. Generally, hearsay is an out-of-court statement admitted "to prove the truth of the matter asserted," N.J.R.E. 801(c), and, subject to limited exceptions, is inadmissible. N.J.R.E. 802. Ordinarily, a third party's testimony about a victim's out-of-court description of

A-2320-21

an alleged sexual assault is inadmissible hearsay evidence. Ibid. However, under the fresh complaint doctrine, the State can present "evidence of a victim's complaint of sexual abuse, [which is] otherwise inadmissible as hearsay, to negate the inference that the victim's initial silence or delay indicates that the charge is fabricated." State v. R.K., 220 N.J. 444, 455 (2015). Still, "the trial court is required to charge the jury that fresh[]complaint testimony is not to be considered as substantive evidence of guilt, or as bolstering the credibility of the victim; it may only be considered for the limited purpose of confirming that a complaint was made." Id. at 456 (citing State v. Bethune, 121 N.J. 137, 147-48 (1990)).

"In order to qualify as fresh[]complaint evidence, the victim's statement must have been made spontaneously and voluntarily, within a reasonable time after the alleged assault, to a person the victim would ordinarily turn to for support." Id. at 455 (citing State v. W.B., 205 N.J. 588, 616 (2011)). In determining whether a compliant was made within a reasonable time after the act(s) occurred, the lapse of time between the incident(s) and the reporting does not bar the statement if explainable by the victim's youth and the attendant circumstances, such as "being cajoled and coerced into remaining silent by their abusers." Bethune, 121 N.J. at 143. In other words, the reasonable time

component of the fresh complaint doctrine must be applied flexibly "in light of the reluctance of children to report a sexual assault and their limited understanding of what was done to them." W.B., 205 N.J. at 618 (quoting State v. P.H., 178 N.J. 378, 383 (2004)).

Furthermore, courts have frequently acknowledged that children may be too embarrassed and scared to discuss sexual abuse, making it necessary to be flexible in the application of the fresh complaint doctrine for child victims of sex crimes. Bethune, 121 N.J. at 144. "A substantial lapse of time between the assault and the complaint may be permissible if satisfactorily explainable by the age of the victim and the circumstances surrounding the making of the complaint." State v. Pillar, 359 N.J. Super. 249, 281-82 (App. Div. 2003). The length of the delay in making a disclosure does not impact the admissibility of the statement, but rather, the weight to be ascribed to the evidence. State v. Bethune, 232 N.J. Super. 532, 536 (App. Div. 1989).

Relevant here, the State argued K.N.'s disclosure was made to natural confidantes, such as L.H., J.N., and A.C., citing State v. Balles, 47 N.J. 331, 338-39 (1966). The State also argued the statements must be self-motivated and not be part of an interrogation, and that K.N.'s statements to these three individuals satisfies those requirements. The State also asserted K.N.'s delay in

disclosing defendant's alleged sexual abuse is understandable because he stood in a position of authority over her not only as an adult figure, but also as Brittany's father and her mother's boyfriend. Pillar, 359 N.J. Super. at 281-282. In addition, the State noted that defendant specifically told K.N. when she was eight or nine not to tell anyone about what happened and that no one would believe her.

In its N.J.R.E. 104 closing argument before the motion court, the State relied on our Court's decision in W.B., 205 N.J. at 597, 616, where a sixteen-year-old victim disclosed to her boyfriend that she had been sexually assaulted by her stepfather when she was fourteen years old, approximately a year and a half after the last alleged assault. The Court affirmed our decision upholding the trial court's determination that the disclosure was made "within a reasonable time." Id. at 619. The interval of time was deemed reasonable in the Court's view based on the victim's "open rebellion" against defendant and her mother because they did not want her dating her boyfriend. Id. at 618. The State here argued the fact pattern was relevant to the matter under review.

The State also relied on State v. Hummel, where we affirmed the trial court's decision to admit fresh complaint testimony where the victims were foster children who alleged they were sexually abused by their foster father. 132

11

N.J. Super. 412, 423 (App. Div. 1975). In that case, we noted it was reasonable for the victims not to disclose the abuse while they lived with defendant because he had threatened them with being put away in a shelter if they spoke. Ibid. We also noted that a delay of four to six weeks after being moved to a children's shelter was not unreasonable, as "a [fifteen]-year-old girl, abused and threatened for some three years, would reasonably require several weeks to overcome her residual fears." Ibid. In addition, the State argued that in State v. L.P., fresh complaint evidence was admitted of an alleged sexual assault involving a child victim even though the statements were made almost a year after the date of the alleged assault. 352 N.J. Super. 369, 374 (App. Div. 2002).

In addition, the State argued that in State v. Pillar, we determined a statement under the fresh complaint doctrine was admissible even though the dates of the abuse were unclear when the last act of sexual abuse apparently occurred close in time to the date of the disclosure. 359 N.J. Super. at 284-85. We also held, in Pillar, however that a statement made by a second victim six years after the sexual abuse allegedly took place was not admissible under the fresh complaint doctrine because it was too remote and was not spontaneous. Ibid.

12

## Defendant's Argument

Defendant argues the specific dates and acts of sexual abuse involving K.N. have not been specified and still remain unknown. Defendant maintained the three putative fresh complaint witnesses, L.H., J.N. and A.C., were not informed of K.N.'s allegations of sexual abuse near the time of the alleged incidents, and their proffered testimony cannot be considered "fresh." Defendant contended the disclosures "are alleged to have been made [seven years] after the incident" even though he had been out of L.N. and her mother's home for five years.

In defendant's view, the three proposed statements made by K.N. to the three testifying witnesses—L.H., J.N., and A.C.—about defendant's alleged sexual assaults against her did not satisfy the criteria to admit the fresh complaint testimony. Defendant argued the first "hearsay statement" to L.H. was made a minimum of three years and three months after the alleged abuse ended, and the two "later" hearsay statements to J.N. and A.C. were made a "minimum of five years" after the alleged abuse ended. Defendant contends these time frames "fall outside the bounds of what our courts have held to be a reasonable delay." Following summations, the motion court reserved decision.

13

On February 24, 2022, in a written opinion, the motion court denied the State's motion to admit the fresh complaint evidence of all three witnesses—L.H., J.N., and A.C. The motion court found that K.N.'s disclosures to L.H., J.N., and A.C., who it determined were natural confidantes of the victim, were nonetheless inadmissible because the statements "were not clearly made within a reasonable time" after the alleged sexual assault under the fresh complaint doctrine. The motion court rejected defendant's argument that children cannot be natural confidantes of a victim. However, the motion court noted that no specifics as to K.N.'s allegations were provided, and the three witnesses were not told of the allegations of abuse near the time of the alleged incidents. The motion court found the disclosures were made seven years after the alleged incidents despite defendant having been out of K.N.'s home for five years prior thereto.

The motion court noted L.H. and J.N. testified about the time they spent with K.N. growing up and their mutual support for one another, and A.C. had built a relationship with K.N. through interactions as her school counselor. However, the motion court found the victim's disclosures to these three individuals were inadmissible fresh complaint evidence. The motion court

entered a memorializing order denying the State's motion for leave to admit evidence of K.N.'s reports as fresh complaint evidence and granted the State's motion to stay the order pending an appeal. We granted the State's motion for leave to appeal from the motion's court's order.

## II.

We review a trial court's evidentiary decision under a deferential standard. State v. Medina, 242 N.J. 297, 412 (2020). A trial court's decision "should be upheld 'absent a showing of an abuse of discretion, i.e., there has been a clear error of judgment.'" State v. J.A.C., 210 N.J. 281, 295 (2012) (quoting State v. Brown, 170 N.J. 138, 147 (2001)). A trial court's application of "the proper legal standing in evaluating the admissibility of evidence," however, is reviewed de novo. State v. Trinidad, 241 N.J. 425, 448 (2020).

## III.

In its opinion, the motion court explained the relaxed reporting requirements for child victims of sexual assault, in addition to the "aura of intimidation" factor that allows for a lengthier lapse of time to be considered "reasonable." W.B., 205 N.J. at 618-19 (citing L.P., 352 N.J. Super. at 384). However, the motion court then pointed out a time discrepancy between the last alleged date of assault in 2013 and defense counsel's representation that

15

defendant moved out of the victim's home in 2012 to Georgia that same year. The State contested defendant's purported move to Georgia on the basis that no evidence was presented on this issue other than K.N.'s mother's statement to the Division.

The motion court found that the disclosures were not made within a reasonable time, because "the New Jersey [c]ourts have never found a five-year gap to be reasonable, absent the presence of an aura of intimidation."  The motion court reasoned that the victim had been removed from any aura of intimidation, since defendant allegedly moved out of the victim's home in 2012, despite a lack of testimony or evidence supporting that purported fact.

A.  L.H.

K.N.'s initial disclosure to L.H. was allegedly triggered by anxiety associated with having to see defendant at an upcoming family gathering.  We conclude the motion court abused its discretion and erred in determining the victim's disclosure to L.H. was not made within a reasonable time.  The motion court abused its discretion by not considering K.N.'s very young age—eight to ten years old—when the alleged sexual assaults by defendant occurred.

Moreover, the motion court ignored defendant's statements to K.N. about keeping his conduct a secret; and K.N.'s statements that she did not report the

16

assaults sooner because she was concerned about the effect the disclosures would have on her family because defendant is Brittany's father. Given these circumstances, which were not taken into account by the motion court, it is not unreasonable for eight-to-ten-year-old K.N. to wait until she was more mature and older—at the still tender age of thirteen—to first disclose she had been sexually assaulted.

Seminal cases related to the fresh complaint doctrine highlight granting deference to children through a more flexible reporting requirement, and many cases have found one to three years between the sexual assault and disclosure to be reasonable. In W.B., the victim was attacked by her stepfather at age fourteen, and she later disclosed the incident at age sixteen. W.B., 205 N.J. at 618. Our Supreme Court concluded that the timespan was reasonable for purposes of admitting fresh complaint testimony. Id. at 619.

The Court reasoned the victim's age at the time of the disclosure; her residing with the defendant at least part of the time in between the assault and the disclosure; and her fear of reporting the abuse were all contributing factors that impacted the determination of reasonableness. Id. 618-19; see also State v. R.E.B., 385 N.J. Super. 72, 88-90 (App. Div. 2006) (concluding that the victim's

disclosure regarding repeated sexual assault incidents by her own father after two years was reasonable).

Just as in W.B., the victim in this case, K.N., was allegedly sexually assaulted by defendant, who was a father figure in the household, and she experienced repeated sexual assaults at a very young age, ostensibly over a two-year period. And, similar to W.B., the victim disclosed the incident during her teenage years, and mentioned her fears about coming forward.

We also find that the motion court's reliance on defense counsel's representation defendant relocated to Georgia in 2012 to determine, at least in part, the reasonableness of the length of time between the alleged sexual assaults and K.N.'s disclosure, was improper. As the State points out, there is no competent evidence in the record supporting defense counsel's representation about defendant relocating out of state. Moreover, the motion court did not consider the fact that the grand jury heard testimony from Detective Graham and had statements from K.N. and the three witnesses—L.H., J.N., and A.C.—for its consideration during deliberations, which ultimately led to a finding of probable cause that defendant committed the alleged sexual assaults through June 2013, and thus long after defendant purportedly relocated to Georgia according to counsel's unsupported contention. K.N.'s disclosure to L.H. occurred

18

approximately three years after the last alleged sexual assault. We therefore conclude the motion court's reasoning and conclusion, which are based solely on defense counsel's argument and in the absence of expert testimony on this issue, to constitute reversible error.

Given these compelling circumstances, we reverse the motion court's order barring L.H.'s testimony about K.N.'s disclosures at age thirteen. We conclude L.H.'s testimony qualifies as fresh complaint evidence and will be admissible at the time of trial.

B. J.N. and A.C.

We now turn to the proffered fresh complaint testimony of J.N. and A.C. The State reiterates its argument on appeal that the existence of an "aura of intimidation" is a crucial factor to be considered in the analysis regarding reasonable timeliness of a child victim's disclosure.[3] In L.P., the victim testified she was sexually assaulted by her adoptive father on multiple occasions, from ages nine to twelve, and that her adoptive father had threatened to kill her if she

---

[3] Ramona Alaggia, Delphine Collin-Vézina, and Rusan Lateef (2017). Facilitators and Barriers to Child Sexual Abuse (CSA) Disclosures: A Research Update (2000-2016). 20(2) Trauma Violence Abuse 260, 277 (2019) ("Families with rigidly fixed gender roles, patriarchal attitudes, power imbalances, other forms of child abuse and domestic violence, chaotic family structure, dysfunctional communication, and social isolation have been found to suppress disclosure".).

19

A-2320-21A-2320-21

told anyone. 352 N.J. Super. at 369. The victim did not tell anyone about the sexual assault until a year later, after she was placed in foster care. Ibid. We determined that the victim's disclosures were made within a reasonable time, given the verbal threats made by the defendant, as well as his physical abuse. Ibid.; see Hummel, 132 N.J. Super. at 423 (holding fresh complaint statements made three years after the sexual abuse were reasonable, due to the defendant's control over the victims who threatened them if they spoke up).

In Pillar, the child victims, P.T. and S.A.T., were sexually assaulted over a five-year period by an individual who either lived or frequently visited the home while living in another state. 359 N.J. at 258. When the defendant was not in this State, he maintained contact with one of the victims, P.T., and made a verbal threat during their last known encounter. Ibid. We concluded that P.T.'s statement fell within the fresh complaint doctrine, even though the exact dates of abuse were unclear. Id. at 284-285. We reasoned that the statement was reasonably contemporaneous, considering the victim's age and the entire set of circumstances. Ibid. However, we reached a contrary conclusion regarding a statement made by S.A.T. six years after the alleged sexual abuse, not only due to the late timing of the disclosure, but because the relationship and spontaneity requirements were not met. Ibid.

Given that K.N. made her disclosures to L.H. in 2016, the record lacks any evidence supporting a finding her disclosures two years later to J.N. and A.C. were made within a reasonable time of the alleged sexual assaults. See L.P., 352 N.J. Super. at 382. Moreover, the facts here demonstrate K.N.'s disclosures to J.N. and A.C. occurred more than five years after the alleged abuse ended in 2013. The motion court did not abuse its discretion by finding K.N.'s complaints to J.N. and A.C. were too remote in time to constitute fresh complaints.

In sum, we (1) reverse the motion court's order barring L.H. from testifying at the time of trial and (2) affirm the motion court's order barring J.N. and A.C. from testifying at trial.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with our opinion. The stay order is vacated. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

21

A-2320-21