**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3540-14T4

STATE OF NEW JERSEY

       Plaintiff-Respondent,

v.

R.K.,

       Defendant-Appellant.

_____

       Argued October 3, 2017 — Decided December 1, 2017

       Before Judges Sumners and Moynihan.

       On appeal from Superior Court of New Jersey,
       Law Division, Salem County, Indictment No. 13-
       08-0451.

       Solmaz F. Firoz, Assistant Deputy Public
       Defender, argued the cause for appellant
       (Joseph E. Krakora, Public Defender, attorney;
       Mr. Firoz, of counsel and on the brief.

       Claudia Joy Demitro, Deputy Attorney General,
       argued the cause for respondent (Christopher
       S. Porrino, Attorney General, attorney; Ms.
       Demitro, of counsel and on the brief).

PER CURIAM

R.K. was indicted for acts committed against his daughter, K.K., when she was less than thirteen years old: first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a) (Counts One and Two);[1] second-degree sexual assault, N.J.S.A. 2C:14-2(b) (Count Three); and second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a) (Count Four).[2] A jury found defendant guilty on all counts.

Defendant was sentenced to concurrent seventeen-year terms in state prison on Counts One and Two, both subject to the No Early Release Act, N.J.S.A. 2C:43-7.2; an eight-year term on Count Three, concurrent to Counts One and Two; and a five-year term on Count Four, consecutive to Counts One, Two and Three.[3]

On appeal, defendant argues:

POINT I

DEFENDANT WAS DEPRIVED OF A FAIR TRIAL WHEN S.K.'S TESTIMONY EXCEEDED THE BOUNDS OF FRESH COMPLAINT AND A PROPERLY TAILORED CURATIVE INSTRUCTION WAS NOT ISSUED TO THE JURY.

---

[1] The first count of the indictment alleged anal penetration; the second count alleged defendant had his daughter perform fellatio upon him.

[2] The sexual conduct alleged to constitute endangering was "oral[-]to[-]genital penetration and genital[-]to[-]anal penetration."

[3] Defendant was also sentenced to comply with Megan's Law, N.J.S.A. 2C:7-1 to -11, and Parole Supervision for Life, N.J.S.A. 2C:43-6.4, on Counts One, Two and Three.

POINT II

DURING HER CLOSING STATEMENT, THE PROSECUTOR
MISLED THE JURY AS TO RESULTS FROM THE
FORENSIC TESTING CONDUCTED ON THE BEDROOM
CARPET, A CRUCIAL PIECE OF EVIDENCE THAT WENT
DIRECTLY TO DEFENDANT'S GUILT. THIS
PROSECUTORIAL MISCONDUCT, PAIRED WITH THE LACK
OF A PROPER CURATIVE INSTRUCTION FROM THE
COURT, DEPRIVED DEFENDANT OF A FAIR TRIAL.

POINT III

DEFENDANT'S SENTENCE WAS EXCESSIVE AS THE
COURT FAILED TO PROPERLY WEIGH THE AGGRAVATING
FACTORS AND ERRONEOUSLY IMPOSED CONSECUTIVE
SENTENCES.

We disagree with defendant's contentions with regard to Points I

and II and affirm, but remand for resentencing for the reasons we

express below in detail.

I.

S.K., K.K.'s mother, testified at trial as a fresh-complaint

witness that on June 16, 2013, K.K. handed her a note[4] and told

her, "Daddy raped me." Although S.K. could not recall the exact

words used by her daughter when she asked K.K. if she knew what

"rape" meant, S.K. testified, "[W]hat she did say was that her

father made her suck his penis." S.K. then told the jury that

K.K. informed her when the act occurred — "[a]bout a week, a couple

_____

[4] The note read, "Mommy, I can't tell you this, so I write it to
you. Daddy used to and rarely now, rape me. I got up my courage
to do this."

weeks ago" — where it occurred, where K.K.'s brothers and S.K. were at the time, and what defendant told the brothers prior to the act. S.K. also testified that she asked K.K., "Has this happened before?" S.K. followed with:

> And, she said, "Yes." And, she said, "But only on the weekends when I wasn't there." And, that I asked her questions like, "Well, what happened? Or, where?" She said it happened in, you know, my bedroom, that he licked her down there. In her vagina, and he had used - - touched her there with his fingers. That he had also touched her anus with his fingers.

"The fresh-complaint rule allows witnesses in a criminal trial to testify to a victim's complaint of sexual assault." State v. Hill, 121 N.J. 150, 151 (1990). The limited purpose of fresh-complaint testimony is to rebut the inference that the victim's initial silence was inconsistent with later claims of abuse. Id. at 151-52.

Defendant does not contend the fresh-complaint testimony offered was inadmissible, but that S.K. exceeded the bounds of proper fresh-complaint testimony and offered "unnecessary details of the substance of K.K.'s complaint." Defendant also avers the trial judge "failed to issue a sufficiently tailored jury instruction to cure the prejudice caused" by the admission of S.K.'s testimony. No objection was raised to the testimony or to the model jury charge on fresh-complaint delivered by the judge

4

at the conclusion of S.K.'s testimony and, again, at the end of the case.

The Supreme Court addressed the issues raised here, and our standard of review, in State v. R.K., 220 N.J. 444, 456 (2015):

> Only the facts that are minimally necessary to identify the subject matter of the complaint should be admitted; the fresh-complaint testimony is not to be used "to corroborate the victim's allegations concerning the crime." [State v. Bethune, 121 N.J. 137,] [i]d. at 146, 578 A.2d 364 [(1990)]; see also [State v.] W.B., supra, 205 N.J. [588,] at 617, 17 A.3d 187 [(2011)] ("A witness may testify only to the general nature of the complaint, and unnecessary details of what happened should not be repeated."). Therefore, the trial court is required to charge the jury that fresh-complaint testimony is not to be considered as substantive evidence of guilt, or as bolstering the credibility of the victim; it may only be considered for the limited purpose of confirming that a complaint was made. Bethune, supra, 121 N.J. at 147-48, 578 A.2d 364; State v. P.H., 178 N.J. 378, 393, 840 A.2d 808 (2004) (asserting that Bethune "required" courts to give limiting instruction).
>
> When a defendant fails to object to an erroneous or omitted limiting instruction, it is viewed under the plain-error rule, Rule 2:10-2. Thus, the error will be disregarded unless a reasonable doubt has been raised whether the jury came to a result that it otherwise might not have reached. State v. Daniels, 182 N.J. 80, 95, 861 A.2d 808 (2004). Plain error is more likely to be found if there is any indication that jurors considered the fresh-complaint testimony for an improper purpose. See, e.g., State v. Williams, 377 N.J. Super. 130, 152, 871 A.2d 744 (App.

Div.), <u>certif. denied</u>, 185 <u>N.J.</u> 297, 884 <u>A.</u>2d 1266 (2005).  However, if the State's case is particularly strong, any fresh-complaint instruction errors may be deemed harmless. [State v.] <u>Tirone</u>, <u>supra</u>, 64 <u>N.J.</u> [222,] at 227, 314 <u>A.</u>2d 601 [(1974)].

We realize the judge, at first, limited the fresh-complaint testimony to the disclosure of "the nature of the [c]omplaint, the time and place where the victim made the [f]resh [c]omplaint.  The circumstances under which it was made.  That it was made to [S.K.]"  He later clarified that the "circumstances" included "the number of times and the time frame involved."  He expressed concern to defense counsel that if he limited the disclosure to, "Dad raped me," an inference might be drawn that defendant committed acts other than those charged.  Because his ruling was handed down some ten months prior to trial, he invited defense counsel to advise him and the prosecutor at the pre-trial conference if she preferred a wider disclosure.  There is no record of any follow-up discussion at the pre-trial conference, nor was there an objection to S.K.'s testimony at trial.

Fresh-complaint testimony may include some details of a defendant's actions to identify the nature of the complaint.  <u>State v. Balles</u>, 47 <u>N.J.</u> 331, 339 (1966), <u>cert. denied</u>, 388 <u>U.S.</u> 461, 87 <u>S. Ct.</u> 2120, 18 <u>L. Ed.</u> 2d 1321 (1967).  Here, we conclude the disclosure of the details of defendant's actions was not plain

error. The word, "rape," is a broad term. This trial involved allegations of varied sex acts. Some detail specifying what K.K. meant when she disclosed to her mother that she was "raped" was warranted. The jury, when considering the fresh complaint for its proper purpose, had to know the nature of the complaint made to S.K. S.K. described many sex acts, but we are mindful that K.K. endured many sex acts. S.K.'s words were not particularly delicate, but neither were the acts; the brief descriptions were plain-spoken, not overly provocative. S.K. did not elaborate in great detail. She did not provide more detail than that which was contained in the charges presented to the jury. Cf. State v. J.S., 222 N.J. Super. 247, 254-55 (App. Div.) (finding prejudice where the fresh-complaint witness testified about acts that formed the basis of charges against the defendant that had been dismissed), certif. denied, 111 N.J. 588 (1988). Like the testimony in Balles, supra, 47 N.J. at 339, S.K. identified the nature of K.K.'s complaint.

Even if S.K. did provide immoderate details, it did not rise to plain error. The judge comprehended the bounds of S.K.'s testimony and tailored the model jury charge to include mention, not only of the note K.K. had given to her mother indicating that her father raped her, but also of S.K.'s discussion of the "specific details of the alleged abuse." The jury was thus

instructed to consider the note and the details of the abuse only under the parameters of the fresh-complaint instruction. The jury is presumed to have followed same. See State v. Muhammad, 145 N.J. 23, 52 (1996).

Moreover, S.K.'s testimony was far less extensive than K.K.'s testimony describing acts of fellatio, penile-to-anal penetration, cunnilingus, digital-to-vaginal penetration and digital-to-anal penetration. Any error in admitting S.K.'s testimony was harmless. See State v. Queen, 221 N.J. Super. 601, 608-09 (App. Div.) (finding "[a]ny error" to be harmless where victim provided "detailed and substantially identical narrative in her own testimony about the incident which led to the criminal charge"), certif. denied, 110 N.J. 506 (1988). Cf. State v. R.K., supra, 220 N.J. at 459-60 (finding cumulative prejudice when a fresh-complaint witness's testimony and demonstration of a sexual act before the jury was more descriptive and provocative than the victim's, and where the fresh-complaint witness also testified about threats by the defendant to the victim — threats not testified to by the victim during trial). We conclude there was no error, and certainly not plain error, concerning the fresh-complaint testimony and concomitant jury instructions.

The State did not seek to admit the disclosure to S.K. under the tender years exception, N.J.R.E. 803(c)(27), and, as a result,

the judge did not conduct a hearing or make findings pursuant to that evidence rule.  We therefore decline to address the State's argument that S.K.'s testimony would have been admitted as substantive evidence.  See State v. Robinson, 200 N.J. 1, 19-22 (2009).

## II.

Based on K.K.'s disclosure that after defendant ejaculated in her mouth she spit semen on the bedroom carpet, the State removed carpet samples from the bedroom during its investigation and had them tested.  The State introduced expert forensic DNA analysis testimony at trial that testing on the sole carpet sample on which semen was detected revealed defendant was the source of the DNA profile obtained from the non-sperm cell fraction[5] and the source of the major DNA profile obtained from the sperm cell fraction.[6]  That mixture of DNA from the sperm cell fraction was described by the expert as "a very low level mixture."  She elaborated:

> As for the minor component of the mixture, I only detected one allele.  So at all of those [fifteen] locations, only at one of them was there one very minor allele.  And

---

[5] A non-sperm cell fraction contains DNA extracted from cells other than sperm.

[6] A sperm cell fraction contains DNA derived from sperm cells in what was a mixture of DNA profiles.

when I did compare that to [K.K.], she is excluded as a possible contributor to the minor DNA profile obtained from [the carpet sample].[7]

During her summation, the assistant prosecutor argued to the jury that the expert found defendant was the source of the sperm. She also said, "Now, [the expert] does indicate that she has to exclude [K.K.], but why?  Remember also the other part of her testimony?  She talked to you about loci and that there was not enough there in the saliva portion.  That's what she said.  That's what we know."

---

[7] The expert testified:

> [A]llele is the term we use for form of DNA. So we do [fifteen] [short tandem repeat] tests in our laboratory.  So we're looking at [fifteen] locations on your DNA.
>
> And locations on your DNA are called locus, loci for plural.  . . .
>
> . . . .
>
> The allele form of DNA, each person is going to have two forms at every locus or location or gene, one from their mother, one from their father.
>
> . . . So for each individual, you would expect two numbers at each location, one from mom, one from dad, and that is what the results in the allele table summarizes, the actual numerical DNA profiles from each sample . . . .

Defendant claims he was denied a fair trial because the assistant prosecutor misled the jury as to the DNA results, and because the trial judge did not offer a proper curative instruction. Defendant did not object to the State's summation or request a jury instruction.

To warrant reversal, a prosecutor's conduct must have "substantially prejudiced defendant's fundamental right to have a jury fairly evaluate the merits of his defense." State v. Timmendequas, 161 N.J. 515, 575 (1999), cert. denied, 534 U.S. 858, 122 S. Ct. 136, 151 L. Ed. 2d 89 (2001). "In determining whether prosecutorial misconduct is prejudicial and denied defendant a fair trial, we consider whether defense counsel made a timely and proper objection, whether the remark was withdrawn promptly, and whether the court ordered the remarks stricken from the record and instructed the jury to disregard them." State v. Ramseur, 106 N.J. 123, 322-23 (1987). If counsel does not object at trial, "the remarks usually will not be deemed prejudicial." Id. at 323.

The assistant prosecutor incorrectly described the expert's testimony. The expert did not relate her exclusion of K.K. as a source because there were an insufficient number of loci. That brief statement, however, did not substantially prejudice

11

defendant's right to have the jury evaluate the merits of his defense so as to require reversal.

The expert testified that, after obtaining numerical DNA profiles, comparisons are made and three results can follow: an individual can be excluded as a contributor to a sample, included as a contributor, or the results can by inconclusive "either way." The jury heard the expert testify that K.K. was excluded; and then heard a play-back of her testimony during deliberations. The expert's report that was admitted in evidence read, "[K.K.] is excluded as a possible contributor to the minor DNA profile obtained from [the specimen]." Moreover, even considering the assistant prosecutor's remark, there was no evidence that K.K.'s DNA — for whatever reason — was in that sample.

Further, defense counsel adamantly told the jury the expert concluded K.K. was

> excluded as the contributor for the minor DNA profile.
>
> Excluded. That means that the semen they found on the floor was not mixed with [K.K.'s] DNA. You heard it correctly.
>
> Despite the fact that [K.K.] vehemently believed and testified and pointed out that this section [of] carpet is where she spat, her DNA is not found anywhere on this [twenty] by [nineteen] piece of carpet, and it's in evidence.

A-3540-14T4

Defense counsel continued, "[i]f [K.K.] had actually performed oral sex on her father like she testified, there would have not only been a significant amount of staining on the carpet but it would have been mixed with [K.K.'s] DNA" (emphasis added).

Lastly, the judge gave the standard charge to the jury that summations were not evidence and that the jurors, as the sole judges of the facts, had to rely solely on their understanding and recollection of the evidence admitted at trial.

The assistant prosecutor's brief comment on the expert's testimony was not sufficient to substantially prejudice defendant's right to have the jury evaluate his defenses.

### III.

Defendant further claims his sentence was based on improper aggravating factors and that the consecutive sentence on Count Four was not warranted because it involved the same acts and the same victim as the other counts.

Contrary to defendant's contention, the judge properly found aggravating factor two, N.J.S.A. 2C:44-1(a)(2), applied to Counts One, Two and Four. The judge did not base his determination regarding this factor only on the victim's age. He stressed that the factor applied because K.K. was defendant's child, finding that relationship, combined with her youth, rendered her incapable of exercising normal physical or mental power of resistance, a

fact defendant knew or should have known. K.K.'s youth, an element of Counts One, Two and Four, was not double counted; it was applied only in relation to her inability to resist defendant, and only as it related to the predominant fact that defendant was her father.

We also conclude the judge properly found a risk defendant would commit another offense, aggravating factor three, N.J.S.A. 2C:44-1(a)(3), by crediting the report of the doctor from the Adult Diagnostic and Treatment Center, in which the doctor opined that defendant needed therapy which he "declines and resists." The judge found "defendant's lack of receptiveness to any kind of treatment" increased the likelihood he would commit similar offenses.

So too, the judge's conclusion that aggravating factor nine, N.J.S.A. 2C:44-1(a)(9), deserved "full weight" was supported by the evidence. The judge described defendant's crimes as "abhorrent." In light of the number of acts committed against defendant's own daughter, the judge's assessment was correct.

If a sentencing judge properly identifies and balances the factors, and their existence is supported by sufficient credible evidence in the record, an appellate court should affirm the sentence. State v. Carey, 168 N.J. 413, 426-27 (2001); State v.

<u>Megargel</u>, 143 <u>N.J.</u> 484, 493-94 (1996).  We conclude the judge's sentence conformed to those principles.

We do not conclude, however, that the judge's reasons for imposing a consecutive sentence on Count Four were clearly set forth on the record.  <u>See</u> <u>State v. Miller</u>, 205 <u>N.J.</u> 109, 129 (2011)(holding, "if the [sentencing] court does not explain why consecutive sentences are warranted, a remand is ordinarily needed for the judge to place his reasons on the record").  Although the judge indicated "the crimes and their objectives are independent — here, endangering as opposed to the sexual assaults" — he only parroted the "no free crimes" and "multiple offenses" <u>Yarbough</u> factors.[8]  The allegations against defendant in the first count of

_____

[8] The <u>Yarbough</u> factors are:

> (1) there can be no free crimes in a system for which the punishment shall fit the crime;
> (2) the reasons for imposing either a consecutive or concurrent sentence should be separately stated in the sentencing decision;
> (3) some reasons to be considered by the sentencing court should include facts relating to the crimes, including whether or not:
>> (a) the crimes and their objectives were predominantly independent of each other;
>> (b) the crimes involved separate acts of violence or threats of violence;
>> (c) the crimes were committed at different times or separate places, rather than being committed so

the indictment involved anal penetration; the second count stemmed from having his daughter perform fellatio upon him. The sexual conduct alleged in connection with the endangering charge involved "oral[-]to[-]genital penetration" and "genital[-]to[-]anal penetration." We recognize that a determination of the jury's finding as to Count Four may be impossible. The verdict sheet did not contain separate jury questions as to the conduct alleged in connection with the endangering charge. Nor was it clear if the "oral[-]to[-]genital penetration" pertained to fellatio — as charged in Count Two — or to cunnilingus, which was also alleged by K.K. but never attributed to a specific count in the indictment.

---

closely in time and place as to indicate a single period of aberrant behavior;
(d) any of the crimes involved multiple victims;
(e) the convictions for which the sentences are to be imposed are numerous;
(4) there should be no double counting of aggravating factors;
(5) successive terms for the same offense should not ordinarily be equal to the punishment for the first offense[.]

[State v. Yarbough, 100 N.J. 627, 643-44 (1985) (footnote omitted), cert. denied, 475 U.S. 1014, 106 S. Ct. 1193, 89 L. Ed. 2d 308 (1986).]

A sixth factor, imposing an overall outer limit on consecutive sentences, was superseded by legislative action. See State v. Eisenman, 153 N.J. 462, 478-79 (1998).

Furthermore, the judge did not specifically address the balance of the Yarbough factors by stating the facts that pertain to each one. See State v. Yarbough, 100 N.J. 627, 643-44 (1985), cert. denied, 475 U.S. 1014, 106 S. Ct. 1193, 89 L. Ed. 2d 308 (1986). We are compelled to remand this case for sentencing at which the judge should clearly indicate — utilizing the Yarbough factors — the basis for imposing the consecutive sentence on Count Four.

Affirmed in part, remanded for resentencing. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION