# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2304-22

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

A.R.-L.,

     Defendant-Appellant.

_____

Submitted January 14, 2025 – Decided June 6, 2025

Before Judges Sumners and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 21-07-0562.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Monique D. Moyse, Designated Counsel, on the brief).

Yolanda Ciccone, Middlesex County Prosecutor, attorney for respondent (Hudson E. Knight, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant A.R.-L. appeals from his jury trial convictions for sexual assault and child endangerment committed against his wife's eleven-year-old niece, Daniella.[1] The State's evidence shows the sexual abuse occurred approximately three times a week over the span of a year. Defendant contends the indictment should have been dismissed for lack of fair notice because it failed to specify the exact dates on which the sexual abuse occurred. He also raises several trial errors, including that the trial court improperly conducted jury selection by failing to address whether jurors might be prejudiced against him because they would hear evidence of his marital infidelity. He further contends the court improperly admitted hearsay evidence under the "fresh complaint" and "tender years" exceptions. Defendant also argues the court imposed an excessive sentence—one longer than the sentence recommended by the prosecutor. After reviewing the record in light of the parties' arguments and governing legal principles, we affirm the convictions and sentence.

I.

We discern the following facts and procedural history from the record. Defendant repeatedly sexually molested Daniella when she lived with him and

---

[1] We use a pseudonym to protect the confidentiality of the child sexual assault victim. R. 1:38-3(d). We also use a pseudonym to protect the confidentiality of the child who reported the sexual abuse to a school counselor.

his wife. At that time, Daniella was in fifth grade and was attending school virtually apparently due to the COVID-19 pandemic. She would often take classes in the dining room or her aunt's bedroom, which is where the sexual abuse first occurred. Defendant came into the bedroom, closed the door, laid on the bed, and began rubbing her thigh. Daniella stated that she was "weirded out" and that defendant only stopped because there was a knock on the door.

The next time that defendant molested her, defendant told her to sit on the edge of her aunt's bed and remove her pants and underwear. This time, and on future occasions, he locked the bedroom door. Defendant proceeded to take off his pants and rub his penis against her vagina. In this and subsequent encounters, Daniella reported that defendant would continue rubbing against her until he was either "done or someone would knock on the door." Defendant would then tell Daniella to put her clothes back on and not to tell anybody about what happened. She stated that he did this "two or more days of the week," even after she moved to a new residence.

In March 2021, Daniella told her friend Paula about the sexual abuse. Paula told a school counselor, Sheana Hoehman, to speak with Daniella about "a secret." Hoehman then scheduled a meeting with Daniella where Daniella stated that defendant was molesting her.

A-2304-22

Hoehman informed the school social worker and reported the information to the Department of Child Protection and Permanency (DCPP). On that same day, Daniella spoke to law enforcement. Paula also spoke to law enforcement.

Detective David Zavistoski of the Middlesex County Prosecutor's Office conducted a forensic interview.[2] Daniella told Zavistoski that her uncle touches her vagina with his hands and penis and that the last time this happened was the prior Friday. On that day, defendant was the only adult present at the home because Daniella's aunt and mother were working. Daniella was in a bedroom using her phone and defendant entered the room, took her clothes off, and touched her vagina with his penis. She stated that defendant has done this "a lot of times" and the first time it happened was "last year." She estimated that defendant had done this "every week . . . like three times a week." As a result of the interview, Zavistoski arrested defendant.

On July 1, 2021, defendant was charged by indictment with second-degree sexual assault, N.J.S.A. 2C:14-2b and third-degree endangering the welfare of a child under the age of thirteen, N.J.S.A. 2C:24-4a(1).

---

[2] At some point during the interview, the video recorder malfunctioned, so part of the interview is unseen and unheard; the conclusion of the interview is audio-recorded only. Over objection, the State played the available audio and video recording for the jury.

On September 22, defendant objected to the State's motion to present a video recording of the forensic interview of Daniella and to present the testimony of Paula as a "fresh complaint" witness.

On November 29, 2021, defendant also filed a demand for a bill of particulars detailing the specific dates on which the alleged offenses occurred. The State filed a response on December 28, informing defendant that it could not comply with the request. The State explained:

> We believe, respectfully, that defendant has received fair notice of the time frame in which the State contends the abuse happened and the circumstances in which he had access to the victim. It is simply asking too much to require a young victim to provide specific dates to support her disclosure of abuse. We contend that the acts took place on days in which defendant was left in charge of the victim and the other children in the family.

On January 11, 2022, defendant moved to dismiss the indictment based on a lack of fair notice. On March 29, the trial court denied defendant's motions to dismiss the indictment. After a hearing on May 12, the court granted the State's motion to admit into evidence the video recording of Daniella's forensic interview.

A jury trial was held over the course of nine non-consecutive days from June 8 to 23, 2022. On June 20, after a N.J.R.E. 104 hearing, the trial court granted the State's motion to admit the fresh complaint testimony of Paula,

Daniella's schoolmate. The next day, the court granted the State's motion to admit Hoehman's fresh complaint testimony.

On June 23, the jury convicted defendant on both counts. Defendant was sentenced on March 20, 2023. After merging the third-degree endangering conviction into the second-degree sexual assault conviction, the trial court imposed a nine-year term of imprisonment with an eighty-five percent parole ineligibility period subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. The court also ordered defendant to pay fines and to comply with the reporting and notification requirements of Megan's Law. N.J.S.A. 2C:7-1.

Defendant raises the following contentions for our consideration:

> POINT I
>
> THE TRIAL COURT ERRONEOUSLY ADMITTED "FRESH COMPLAINT" TESTIMONY FROM HOEHMAN, DEPRIVING [DEFENDANT] OF HIS RIGHT TO A FAIR TRIAL.
>
> POINT II
>
> THE TRIAL COURT DEPRIVED [DEFENDANT] OF HIS RIGHT TO A FAIR TRIAL BY AN IMPARTIAL JURY BY LIMITING THE SCOPE OF VOIR DIRE ON A SPECIFIC BIAS PRESENT IN THIS CASE, AND THEN OMITTING THE CRUCIAL JURY CHARGE ON JUROR BIAS.

POINT III

THE TRIAL COURT ERRED IN FAILING TO DISMISS THE INDICTMENT BECAUSE IT PRECLUDED [DEFENDANT] FROM PRESENTING A DEFENSE AND VIOLATED HIS RIGHT TO A FAIR TRIAL.

POINT IV

THE ADMISSION OF SUGGESTED, REPETITIVE, CORROBORATIVE HEARSAY STATEMENTS PURSUANT TO THE TENDER YEARS EXCEPTION WAS UNDULY PREJUDICIAL AND CUMULATIVE, AND DEPRIVED [DEFENDANT] OF HIS RIGHT TO A FAIR TRIAL.

POINT V

THE TRIAL COURT ABUSED ITS DISCRETION BY IMPOSING A MANIFESTLY EXCESSIVE SENTENCE.

## II.

We first address defendant's contention that the trial court erred in admitting the testimony of the school counselor, Hoehman. Specifically, defendant contends: (1) the trial court abused its discretion because Hoehman's testimony does not meet the fresh complaint hearsay exception's narrow purpose and requirements; (2) her testimony violates N.J.R.E. 404(b), which generally excludes "other wrongs" evidence; (3) Hoehman's testimony was unnecessarily cumulative as the jury already heard that Paula reported the sexual abuse and

7

Hoehman's testimony improperly bolstered Paula's and Daniella's creditability by providing evidence of their prior consistent statements; and (4) the trial court exceeded its impartial role and deprived defendant of the right to a fair trial because the parties initially agreed it was not fresh complaint testimony, but the court persuaded the State to seek to admit it on that theory.

We begin our analysis by acknowledging the foundational legal principles that apply. Generally, hearsay—an out-of-court statement admitted to prove the truth of the matter asserted, N.J.R.E. 801(c) —is inadmissible, subject to limited exceptions. N.J.R.E. 802. The fresh complaint doctrine allows "evidence of a victim's complaint of sexual abuse, otherwise inadmissible as hearsay, to negate the inference that the victim's initial silence or delay indicates that the charge is fabricated." State v. R.K., 220 N.J. 444, 455 (2015). "[T]o qualify as fresh complaint, the victim's statements to someone [they] would ordinarily turn to for support must have been made within a reasonable time after the alleged assault and must have been spontaneous and voluntary." State v. Hill, 121 N.J. 150, 163 (1990).

The Court in Hill explained that "fresh-complaint evidence serves a narrow purpose . . . [to] allow[ ] the State to negate the inference that the victim was not sexually assaulted because of [their] silence." Ibid. Consistent with

that limited purpose, "fresh complaint testimony is not to be used 'to corroborate the victim's allegations concerning the crime.'" R.K., 220 N.J. at 456 (quoting State v. Bethune, 121 N.J. 137, 146 (1990)). Accordingly, a jury may not consider fresh-complaint testimony "as substantive evidence of guilt, or as bolstering the credibility of the victim; it may only be considered for the limited purpose of confirming that a complaint was made." Ibid.

For that reason, the testimony must exclude details of the assault that the complaint may have conveyed. "Only the facts that are minimally necessary to identify the subject matter of the complaint should be admitted." Ibid. Given the testimony's "narrow purpose of negating inferences that the victim had failed to complain," a trial court must also "assess . . . whether repeated testimony of the victim's complaint is irrelevant or prejudicial to the defendant." Hill, 121 N.J. at 169.

Furthermore, N.J.R.E. 404(b)(1) provides that "evidence of other crimes, wrongs, or acts is not admissible to prove a person's disposition in order to show that on a particular occasion the person acted in conformity with disposition." N.J.R.E. 404(b)(2), however, allows this evidence to "be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan,

knowledge, identity, or absence of mistake or accident when such matters are relevant to a material issue in dispute."

"[A] trial court's evidentiary rulings are entitled to deference absent a showing of an abuse of discretion . . . ." State v. Nantambu, 221 N.J. 390, 402 (2015) (quoting State v. Harris, 209 N.J. 431, 439 (2012)). A trial court's evidentiary rulings should only be reversed if the rulings were "so wide of the mark that a manifest denial of justice resulted." State v. Kuropchak, 221 N.J. 368, 385-86 (2015) (quoting State v. Marrera, 148 N.J. 469, 484 (1997)). A trial court is deemed to have abused its discretion "when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" State v. R.Y., 242 N.J. 48, 65 (2020) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)). Evidentiary decisions are reviewed de novo, however, "whe[n] the trial court fails to apply the proper legal standard in evaluating the admissibility of evidence." State v. Trinidad, 241 N.J. 425, 448 (2020).

Where there was no objection to the claimed error at trial, appellate courts review the matter for plain error. R. 2:10-2. The possibility of injustice must be "sufficient to raise a reasonable doubt as to whether the error led the jury to

a result it otherwise might not have reached." State v. Macon, 57 N.J. 325, 336 (1971).

We next apply these general principles to the present circumstances. After a N.J.R.E. 104 hearing, the trial court found that Hoehman's testimony was hearsay but nonetheless admissible under the fresh complaint exception. We are satisfied that Hoehman's testimony qualifies under that doctrine. The evidence showed that Daniella complained of sexual abuse. See Hill, 121 N.J. at 169. Paula told Hoehman to speak with Daniella about "a secret" and, following up on that secret, Hoehman met with her and was informed that defendant was molesting Daniella.

Second, the victim's statement was made within a reasonable time after the alleged assault. Daniella's disclosure was "within six days of . . . [the] last alleged act of abuse . . . ." In her interview with law enforcement, which occurred on the same day as her disclosure to Hoehman, Daniella stated that the last time defendant molested her was the prior Friday.

Third, as the trial court noted, the disclosure "was made to someone who . . . a child might confide . . . in revealing such an intimate incident." The record shows that Daniella and Paula were familiar with Hoehman as a school

11

counselor and the facilitator of a young girls' group in which they both participated.

Fourth, Daniella's disclosure was spontaneous as she indicated that there was not "anything that particular day that led [her] to . . . text [Paula] about" what was happening. The spontaneity and voluntary nature of the statement is shown by the fact that Hoehman invited Daniella to the meeting shortly after Paula told her to talk to Daniella. Daniella then told Hoehman of defendant's actions.

The trial court also properly instructed the jury on the limited purpose of Hoehman's testimony.[3] This served the purpose of counteracting the concerns that defendant now raises regarding cumulative and prejudicial testimony.

In sum, we conclude the trial court did not abuse its discretion with respect to the fresh complaint testimony or otherwise commit plain error. See R.Y., 242 N.J. at 65; R. 2:10-2. Nor are we persuaded by defendant's contention that Hoehman's testimony violated N.J.R.E. 404(b) because it involved sexual abuse

---

[3] Defendant asked the trial court for a limiting instruction to clarify that the statement was not being used for the truth of the matter asserted. Defendant raised no objection to the limiting instruction during trial and does not contend on appeal it was inadequate.

occurring before the crimes charged in the indictment.[4]  We note defendant did not object on this ground and thus the trial court had no opportunity to make a ruling or limit Hoehman's testimony.  We are satisfied that defendant has failed to establish plain error warranting reversal.  See R. 2:10-2.

Finally, we need only briefly discuss defendant's contention that the trial court acted improperly by posing questions concerning the admissibility of the fresh complaint evidence.  The record shows the State reconsidered its position and eventually made sound arguments in support of admitting Hoehman's testimony.  Defendant lacks authority in support of his claim that the trial court's questions to the parties were inappropriate.  We are satisfied the trial court did not abandon its neutral and detached role, show bias against defendant, or otherwise deny him a fair trial.

III.

We turn next to defendant's contention that the trial court erred in admitting Daniella's video hearsay statement under N.J.R.E. 803(c)(27), the tender years exception, because the interviewer's questioning was suggestive, rendering the statement untrustworthy.  In the alternative, defendant argues that

---

[4]  Hoehman testified that Daniella related that the abuse began when she was in the third grade.  We note that defendant did not object to that testimony on the grounds it violated N.J.R.E. 404(b).  See R. 2:10-2.

13

even if the video statement was an admissible form of hearsay, it was inadmissible under N.J.R.E. 403 because it was repetitive, cumulative, and unduly prejudicial. Defendant further claims the video statement improperly bolstered Daniella's credibility.

As we have already noted, hearsay testimony is inadmissible unless specifically exempted by an evidence rule or other law, N.J.R.E. 802. One such exception is codified in N.J.R.E. 803(c)(27), which allows for the admission of a statement made by a child under the age of twelve relating to sexual misconduct on a finding of three conditions. The first requirement is that the proponent give notice of an intention to use the statement. N.J.R.E. 803(c)(27)(a). The second requires the court to conduct a hearing pursuant to N.J.R.E. 104(a) and determine "that on the basis of the time, content and circumstances of the statement there is a probability that the statement is trustworthy." N.J.R.E. 803(c)(27)(b). The proponent of a hearsay statement— in this case, the State—must prove the statement bears a probability of trustworthiness by a preponderance of the evidence. State v. James, 346 N.J. Super. 441, 457 (2002). The third requirement is that the child testify at trial. N.J.R.E. 803(c)(27)(c).

14

When determining whether a statement is sufficiently trustworthy to warrant its admission under the tender-years exception, a court must consider "the totality of the circumstances." State v. P.S., 202 N.J. 232, 249 (2010) (citing State v. Roman, 248 N.J. Super. 144, 152 (App. Div. 1991)). The following non-exclusive list of factors are relevant to evaluating the reliability of out-of-court statements made by child victims of sexual abuse: (1) the spontaneity of the statement, whether it was made without prompting or suggestive questioning; (2) whether the declarant's account is consistently repeated; (3) the declarant's mental state; (4) the use of terminology unexpected of a child of a similar age; and (5) the declarant's motive to fabricate. Ibid. (citing Idaho v. Wright, 497 U.S. 805, 821-22 (1990)); see also State v. Donegan, 265 N.J. Super 180 (App. Div. 1993).

Here, Daniella was interviewed when she was eleven, qualifying for the age of tender years. The State provided notice of its intention to use her statement and she testified at trial.

The trial court conducted a N.J.R.E. 104(a) hearing during which it found the statement to be trustworthy. The court considered the trustworthiness factors, analyzed the victim's credibility, and made its conclusion based on the totality of the circumstances. We add that the court acknowledged, but rejected,

defendant's argument "that [it was] improper bolstering that would . . . result in undue prejudice to [defendant] by the jury hearing the same allegation in so many different ways at trial."

We are unpersuaded by defendant's contention her statement was untrustworthy because Zavistoski at times posed leading questions. The video interview supports the trial court's ruling and that the questions were tailored to elicit further understanding from a young victim. We thus conclude the trial court did not abuse its discretion in admitting the statement under the tender years exception to the hearsay rule.

IV.

Defendant contends the trial court erred by "failing to ensure an impartial jury as to [defendant's] defense, which included an element of infidelity." Defendant posits that to present his defense in a meaningful manner, he "needed to tell the jury that he was living with another woman. This explained why he was not living with [Daniella] and would have had limited contact with [Daniella], and was crucial alibi evidence. It also provided an explanation for why [Daniella] could have fabricated the charges."

We are unpersuaded. We note that the trial court asked defense counsel whether he wanted a voir dire question about infidelity. Counsel, however,

16

choose to have another question read to potential jurors.  Furthermore, the record shows the court instructed the jury regarding bias and preconceived ideas on more than one occasion.  Specifically, during the jury selection process, it explained, "[j]urors must be as free as humanly possible from bias, prejudice or sympathy, and must not be influenced by preconceived ideas."  The court further told potential jurors:

> As we mature we all, to some extent, develop certain biases, prejudices, fixed opinions and views.  We develop these from our families, others around us, the media, and from our everyday experiences.  You are entitled to be who you are and to feel and think about things as you do.  It is important to recognize any biases, prejudices, fixed opinions and views that you may have and to disclose them to me during jury selection.

Additionally, before jury's deliberations, the trial court read the following instructions:

> As jurors, it is your duty to weigh the evidence calmly and without passion, prejudice or sympathy.  Any influence caused by these emotions has the potential to deprive both the state and the defendant of what you promised them, a fair and impartial trial by fair and impartial jurors.  Also, speculation, conjecture and any other forms of guessing play no role in the performance of your duty.

Importantly, defense counsel did not object to the trial court's jury charges, nor did he propose any jury instructions on bias and infidelity at the

time. For the first time on appeal, defendant alleges additional jury charges were required for a fair trial. Accordingly, we apply the plain error standard of review. See State v. Montalvo, 229 N.J. 300, 320 (2017) ("Without an objection at the time a jury instruction is given, 'there is a presumption that the charge was not error and was unlikely to prejudice the defendant's case.'") (quoting State v. Singleton, 211 N.J. 157, 182 (2012)); see also State v. Funderburg, 225 N.J. 66, 79 (2016). We conclude defendant has failed to establish plain error in the way in which potential jurors or selected jurors were instructed.

V.

Defendant next contends the trial court erred in failing to dismiss the indictment because it did not provide fair notice under N.J. Const., art. I, ¶ 10 as to the dates when the sexual assaults allegedly occurred. He argues that pursuant to State v. S.J.C., 471 N.J. Super. 608 (App. Div. 2022) and State v. Salter, 425 N.J. Super. 504, 514 (App. Div. 2012), the State was required to provide more "information as to [its] efforts to narrow the time frame." Relatedly, he contends the trial court never inquired as to whether the State investigated ways to narrow the dates. Instead, defendant asserts, the court "accepted the prosecutor's assertion that 'the [S]tate is unable to give any additional information regarding the dates' as fact" and thus essentially shifted

18

the burden to defendant. Defendant further contends that if he had fair notice, he could have "presented evidence at trial to support his defense, such as work records, testimony from witnesses as to events showing where he was at specific times, or even testimony from school officials as to [Daniella]'s activity schedule, among other evidence."

"A trial court's denial of a motion to dismiss an indictment is reviewed for abuse of discretion." State v. Bell, 241 N.J. 552, 561 (2020) (quoting State v. Twiggs, 233 N.J. 512, 544 (2018)). The trial court's "decision should be reversed on appeal only [if] it clearly appears that the exercise of discretion was mistaken." State v. Abbati, 99 N.J. 418, 436 (1985); see also State v. Williams, 240 N.J. 225, 234 (2019).

"The primary purpose of an indictment is to inform the defendant of the nature of the offense charged against [them] so [the defendant] may adequately prepare [their] defense and at the same time protect [themselves] against another indictment for the same offense." State v. Rios, 17 N.J. 572, 603 (1955). An indictment may not be so general that a petit jury could find a defendant guilty of an offense the grand jury did not charge. State v. Boratto, 80 N.J. 506, 519 (1979). "[I]n determining the sufficiency of an indictment under the New Jersey Constitution, '[t]he fundamental inquiry is whether the indictment substantially

misleads or misinforms the accused as to the crime charged.'" State v. Dorn, 233 N.J. 81, 94 (2018) (second alteration in original) (quoting State v. Wein, 80 N.J. 491, 497 (1979)). In State v. Jeannotte-Rodriguez, this court explained that:

> [I]t has traditionally been the rule that "time and place have been viewed as not requiring great specificity," as they typically are not elements of the crime; "[t]hus, the time allegation can refer to the event as having occurred 'on or about' a certain date and, within reasonable limits, proof of a date before or after that specified will be sufficient, provided it is within the statute of limitations."
>
> [469 N.J. Super. 69, 103-04 (App. Div. 2021) (second alteration in original) (quoting 5 Wayne R. LaFave et al., Criminal Procedure, § 19.3(c) (4th ed. 2020)).]

Moreover, "[w]hat constitutes fair notice depends on the circumstances." Id. at 104 (citing State in the Interest of K.A.W., 104 N.J. 112, 121-22 (1986)). Pertinent here, "[a]mong the factors the [Supreme] Court has deemed relevant to determining whether the dates in an indictment provide fair notice of the crimes is 'the extent and thoroughness of the prosecutor's investigative efforts to narrow the time frame of the alleged offense.'" Ibid. (quoting K.A.W., 104 N.J. at 122).

Here, the indictment charged defendant with conduct "on diverse dates between March 1, 2020 and March 12, 2021." Defendant filed a demand for a bill of particulars, seeking more particularized information about the dates. The

State responded with a letter explaining that it could not provide more specific information about the dates. As a result, defendant filed a motion to dismiss the indictment alleging it did not provide fair notice of the crimes charged and thus precluded him from adequately presenting his defense.

After holding a hearing, the trial court denied defendant's motion to dismiss the indictment. In rendering its decision, the trial court noted that "[i]t's well-established in K.A.W. that what constitutes fair notice depends on the circumstances." The court found that Daniella "was approximately [eleven] years old during the alleged abuse and simply [could not] recall specific dates of her abuse" and that "[t]he time frame set forth by the [S]tate [was] reasonable." It continued to explain, "[t]he [S]tate allege[d] specifically that the sexual abuse took place for a period of one year from March[] 2020 to March[] 2021, during which time [Daniella] was [eleven] years old or [ten] to [eleven] years old." The trial court considered the K.A.W. factors and stressed that the victim reported the sexual abuse "occurred approximately three times per week." The court specifically cited the "victim's age, and the length of the abuse, the continuous course of conduct, a number of individual criminal acts alleged and . . . the passage of time between the alleged . . . last act complained of and the

21

arrest of defendant." We see no abuse of discretion warranting our intervention. See Abbati, 99 N.J. at 436.

## VI.

Finally, we address defendant's contentions regarding the trial court's application of the aggravating and mitigating sentencing factors. The court found aggravating factors three, N.J.S.A. 2C:44-1(a)(3), the "risk that defendant will commit another offense"; four, N.J.S.A. 2C:44-1(a)(4), "the defendant took advantage of a position of trust or confidence to commit the offense"; and nine, N.J.S.A. 2C:44-1(a)(9), the "need for deterring the defendant and others from violating the law." The court also found mitigating factor seven, N.J.S.A. 2C:44-1(b)(7), the "defendant has no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the commission of the present offense." The trial court weighed these circumstances and concluded that the aggravating factors outweighed the mitigating factors. It thereupon imposed a nine-year state prison sentence subject to NERA.

An appellate court reviews a judge's sentencing decision under an abuse of discretion standard. State v. Fuentes, 217 N.J. 57, 70 (2014). The court must determine whether (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based

22

upon competent and credible evidence in the record; or (3) the application of the guidelines to the facts of the case makes the sentence clearly unreasonable so as to shock the judicial conscience. Ibid. (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).

We find nothing shocking in the imposition of a nine-year prison term. Defendant asserts with respect to aggravating factor three that the court's finding was "too general" and "fails to 'state reasons for imposing a sentence including the factual basis supporting a finding of a particular aggravating or mitigating factors affecting sentencing.'" The record belies that assertion. The trial court explained:

> [Defendant]'s alleged to have molested, sexually assaulted his [eleven] year old niece. He was entrusted by the family to care for the children during . . . the shutdown of the schools. The children . . . were at home doing their lessons . . . on their computer, and he took advantage of their isolation and his relationship to victimize, debase and molest an innocent [eleven] year old girl.
>
> . . . .
>
> [A]pparently this had occurred over a period of time, and multiple times. This—according to [Daniella], three times a week for a period of time. The child was not only a victim of . . . the physical assault, but in a sense by virtue of our process she was, again, victimized by having to sit here as a young child, confront her uncle again and tell everyone—strangers

and everyone else in this courtroom what happened. The child is scarred . . . I think it's fair to say that most children who experience this are scarred for life.

Nor are we persuaded by defendant's contention that "[t]he court found aggravating factors because [defendant] never admitted to the offenses and went to trial." We certainly agree with the proposition that a defendant may not receive a more severe sentence because he exercised the right to trial and to testify. That does not mean, however, that a trial court cannot consider a defendant's lack of remorse.

With respect to aggravating factor nine, defendant argues the court did not offer reasons why it was appropriate to consider the need for deterring defendant and others from violating the law. We are satisfied that in finding this factor, the court already explained the circumstances pertaining to the offense and offender that bore on the need to prevent a recurrence of the sexual abuse of Daniella and to deter others from committing such serious crimes against other young children.

Defendant also argues the trial court erred in not finding additional mitigating factors apply, specifically, mitigating factors nine, N.J.S.A. 44-1(b)(9), the "character and attitude of the defendant indicate that the defendant is unlikely to commit another offense," and eleven, N.J.S.A. 44-1(b)(11), the

"imprisonment of the defendant would entail excessive hardship to the defendant or the defendant's dependents." Defendant argues:

> As to factor [nine], the character and attitude of the defendant indicate that he is unlikely to commit another offense, the only competent factual finding made by the court was that "[S]tatic-99R indicates below average risk in terms of recidivism." Thus, there is ample evidence in the record to support this factor. State v. Dalziel, 182 N.J. 494, 504-05 (2005) ("[W]here mitigating factors are amply based in the record before the sentencing judge, they must be found"). As to factor [eleven], excessive hardship, the only evidence on the record as to this factor shows that [defendant] worked multiple jobs and was the financial supporter of his family, including four children, so this factor applies. Id.
>
> [(Second alteration in original).]

The prosecutor acknowledged that "the Static-99 suggested a 'below average risk in terms of recidivism,'" but argued "it is hard to imagine a more reliable way to assess the risk a defendant will commit a future offense than the nature and circumstances of his most recent offense." We note that mitigating factor nine—in contrast to the corresponding aggravating factor three—focuses on the defendant's "character and attitude," not an objective risk assessment tool. We see no abuse of discretion in the trial court's rejection of mitigating factor nine considering that defendant was forty-seven years old when he molested his eleven-year-old niece three times a week over a considerable span of time.

Rather, the court acted well within its discretion in finding that the evidence does not support the conclusion that defendant's character and attitude make it unlikely he would commit another offense.

With respect to mitigating factor eleven, the trial court stated:

> And the imprisonment would entail excessive hardship to himself or dependents. . . . [T]here is no specific or greater hardship to his dependents than would otherwise be the case with any other . . . criminal defendant who is confined. And, in fact, in this case upon completion of his sentence, in all likelihood he'll be deported, so he won't be able to support his family . . . from here anyway.

The trial court's reasoning is sound and provides no basis for our intervention.

Finally, we see no abuse of discretion by the trial court in imposing a greater sentence than the prosecutor recommended which was eight years imprisonment subject to NERA. This is not a situation where the maximum sentence was capped by a plea agreement between the State and the defendant. Cf. State v. Riley, 242 N.J. Super. 113, 118 (App. Div. 1990) (holding that a defendant "who pleads guilty pursuant to a plea bargain agreement has a due process right to the enforcement of the bargain") (citing Santobello v. New York, 404 U.S. 257, 262 (1971)). The trial court was required to make its own independent assessment of the relevant aggravating and mitigating circumstances and was not bound by the prosecutor's sentence recommendation.

Here, the nine-year prison term was within the range of sentences authorized for a second-degree conviction, see N.J.S.A. 2C:43-6(a)(2), and in no way shocks the judicial conscience. See Fuentes, 217 N.J. at 70.

To the extent we have not specifically addressed them, any remaining arguments raised by defendant lack sufficient merit to warrant discussion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-2304-22